ARTHUR E. DWELLY *et al. vs.* HERMAN ROCKLIN *et al.*

APRIL 29, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, and Sweeney, JJ.

(1) *Landlord and Tenant. Attornment. Equity. Forfeiture. Time.*

X. being the owner of a platted track of land executed a lease of a lot to Y. By the terms of the lease the lot was to be used solely for the purpose of the erection and maintenance of a cottage thereon. While Y. was in possession X. conveyed the reversion in fee of the lot without reservation.

The lease contained provision that it should continue until either party should fix a date for its termination by written notice to the other at least thirty days prior to date of termination. This provision applied to the assigns of the parties. Lessee had right to remove buildings before termination of lease and if not so removed they became property of lessor. Owner of reversion gave notice to Y. to terminate lease. Y. did not remove building but brought bill to restrain respondent from taking possession of cottage or asserting title to same or from interfering with complainant in removal thereof.

*Held,* that lessor's right to terminate the lease was by agreement of the parties annexed to the reversion and passed with it to respondents, and respondents as grantees of the reversion were empowered to give the notice terminating the tenancy.

*Held,* further, that the time within which complainant was permitted to remove the cottage was intended as a material part of the covenants of the lease, and at end of that time the cottage became a part of the reversion and title passed to lessor or his assigns.

(2) *Equity. Forfeiture. Time.*

The exercise by equity of its jurisdiction to relieve against forfeiture is not ordinarily dependent upon the establishment of fraud in a respondent or other independent ground of equitable relief. If however relief is sought to prevent a forfeiture which is dependent upon the failure of a complainant to perform some act specified in a contract between the parties, then if it is found that the time within which such action is to be performed is a material part of the contract, equity will not interfere to prevent forfeiture in the absence of fraud in a respondent or some act on his part which has prevented the seasonable doing of the act or in the absence of accident or mistake which has prevented the performance by complainant of the act within the time specified.

(3) *Equity Pleading. Relief.*

Where several complainants whose alleged rights to relief are the same, are permitted to prosecute a bill in equity jointly, the relief if granted will be several.

(4) *Equity. Forfeiture. Time. Accident and Mistake.*

Where several complainants who have prosecuted a bill jointly allege as a ground for relief against forfeiture that they were prevented by accident

and mistake from removing their property within the time limited by the lease, because respondent terminated all of the leases upon the same day and the layout of the land and the number of cottages to be removed made it impossible to secure moving facilities and actually remove the cottages within the time limited, although complainants were permitted to prosecute the bill jointly the relief if granted would be several, and where it appeared that through joint action by complainants and delays in completing the arrangements for removal and securing a tract of land on which to locate the cottages, for all which respondent was not responsible, the removal was not accomplished within the time limited, complainants do not present a ground of accident and mistake entitling them to relief.

(5)   *Equity.   Forfeiture.*

A bill which alleges that certain acts of respondent delayed complainant in the performance of acts which if performed would have prevented a forfeiture, but does not charge respondent with fraud or evil intent in such regard, sets out no ground for relief.

BILL IN EQUITY on facts fully stated in opinion.   Heard on appeal of complainant and denied.

SWEETLAND, C. J.   This is a suit in equity in which the various complainants seek to restrain the respondents from taking possession of certain cottages situated in the town of Portsmouth, or from asserting title to the same, or from interfering with the complainants in the removal of said cottages from the lots upon which they now stand.

The cause was heard before a justice of the Superior Court on demurrer to the second amended bill of complaint. The demurrer was sustained and the bill dismissed.   The cause is before us upon the complainants' appeal from the final decree dismissing the cause.

From the allegations of the bill it appears that in 1920 the New York, New Haven and Hartford Railroad Company was the owner of a platted tract of land in the town of Portsmouth, near the Seaconnet river.   This tract was called "The Hummocks", and was suitable for the location of what is spoken of in the bill as "summer cottages". The Railroad Company made a lease of a separate lot upon the plat to each of the twenty-eight complainants.   By the terms of each lease the lot was to be used solely for the

purpose of the erection and maintenance of a cottage thereon. Subsequent to the execution of the several leases and while the lessees were in possession of their respective lots, the Railroad Company conveyed the reversion in fee of the lots on each plat, without reservation. The reversion in fee through a mesne conveyance vested in the respondents. Each of said leases, among other provisions, contained the following covenants and conditions: "1. The terms of this lease . . . shall continue until either party shall fix a date for the termination hereof in a written notice to be given to the other party at least thirty days prior to such date of termination." "14. The provisions hereof shall apply to the successors, executors, administrators and assigns of the respective parties." "16. It is understood and agreed that the lessee has the right to remove all buildings erected by him within the leased premises on or before the termination of this lease and if not so removed shall thereupon become the property of the lessor."

On March 17, 1924, the respondent served a written notice upon each of the complainants of the respondents' intention to terminate the complainant's lease on April 21, 1924. In each of said notices reference was made to paragraph 16 of the lease, and the same was quoted in full. Each of the complainants failed to remove the cottage from his lot on the plat before April 21, the time fixed for the termination of the lease in the notice of the respondents, but on that day the complainants joined in commencing this proceeding in equity. The bill alleges that the respondents are asserting and threatening that they will enter the premises leased by the complainants respectively, and that the respondents claim as their own the cottages erected by the complainants.

The Superior Court overruled the respondents' demurrer based on the ground of the misjoinder of the twenty-eight parties complainant. That court held that the existence of a common interest between the complainants, and a common question between the complainants and the respondents

justified the joinder to avoid a multiplicity of suits. The propriety of the court's ruling in this regard has not been presented to us and we do not pass upon that question.

(1) The ground of demurrer upon which the second amended bill was dismissed was that the complainants have not stated facts in the bill which entitle them to relief in equity.

The complainants, among other things, seek to support their appeal upon the allegations of the bill that the complainants have not, nor has any one of them, attorned to the respondents as lessors; that they are not tenants of the respondents; and that the respondents are without authority to give the notice now in question. To support this position the complainants rely solely upon the authority of *Comstock* v. *Cavanagh*, 17 R. I. 233, in which case it was held that if at the making of a lease the land demised be in the possession of a tenant of the lessor under a prior letting, so that no entry upon the land can lawfully be made by the lessee, the lessee can acquire no estate in the land during the continuance of the prior tenancy, unless he can prevail upon the prior tenant to attorn to him. The soundness of this decision has been questioned. 1 Tiffany, Landlord and Tenant, 875 and note. In those American jurisdictions which have not reënacted the provisions of the statute of 4 Anne c. 16, dispensing with the necessity of attornment, the weight of authority appears to be either that the statute has continued in force since the declaration of American independence, or that, by reason of the nature of land tenures in this country, the doctrine of attornment has no application. *Comstock* v. *Cavanagh*, however, if it should be approved, does not govern the case at bar. The lessor and lessee by the terms of paragraph 14 of the lease have covenanted that the provisions of the lease should apply to the successors and assigns of the respective parties. The lessor's right to terminate the lease upon thirty days' notice was by the agreement of the parties to the lease annexed to the reversion and passed with it to these respondents. *Roe,* on the *Demise of Bamford* v. *Hayley*, 12 East 463; *Hollywood*

v. *First Parish in Brockton*, 192 Mass. 269.   In our opinion the respondents as grantees of the reversion were, in accordance with the provisions of the lease, empowered to give the notice terminating the tenancy of the complainants, and (2) the respondents can avail themselves of the rights given to the original lessor under paragraph sixteen of the lease.

The complainants also contend that under the allegations of the bill they should be granted relief to prevent a forfeiture of their property in the cottages erected upon their respective lots.   They can not question that at law under the covenants of the lease the lessee's right to remove the cottage from his lot ceased upon the termination of the lease; and that if the cottage was not removed before that time it became a part of the real estate and belonged to the owner of the reversion.   The complainants urge, however, that equity does not regard time as material and to prevent a forfeiture will extend the time within which an act is to be performed beyond the period prescribed by the parties in their agreement.   This contention is sound unless the parties have made time of the essence of their contract, either by express stipulation or when such an intention clearly appears as a necessary inference from the terms and the nature of the contract.   The exercise by a court of equity of its jurisdiction to relieve against forfeitures is not ordinarily dependent upon the establishment of fraud in a respondent, or other independent ground of equitable (3) relief.   If, however, as in this case relief is sought to prevent a forfeiture, which is dependent upon the failure of a complainant to perform some act specified in a contract between the parties, then if it is found that the time within which such action is to be performed is a material part of the contract, equity will not interfere to prevent forfeiture, in the absence of fraud in a respondent, or some act on his part which has prevented the seasonable doing of the act required, or in the absence of accident or mistake which has prevented the performance by a complainant of the act required within the time specified in the contract.   Under

the decisions of this court it is clear that the time within which each of these complainants is permitted to remove the cottage from his lot, *i. e.*, before the termination of his lease, is intended as a material part of the covenants of the lease.  At the expiration of that time the cottage became a part of the reversion and the title passed to the lessor or his assigns.  *Ives* v. *Armstrong*, 5 R. I. 567, 594; *Hicks* v. *Aylesworth*, 13 R. I. 562, 566.

The complainants urge that they have alleged facts which entitled them to relief on the ground of accident or mistake.  These allegations in substance are that, because the respondents terminated the leases of all the complainants upon the same day, the layout of the land and the number of cottages to be removed "made it impossible for your complainants to secure moving facilities and actually remove their cottages within the time limited by their leases".  This is a very general and indefinite allegation of accident or mistake on which to base a prayer for relief.  Although the Superior Court has permitted this suit to be prosecuted by the complainants jointly, the relief if granted would be several.  From the provisions of the separate leases it must have been in the contemplation of each lessee that the structure to be placed upon his lot should be one readily removable upon thirty days' notice.  Whatever might or might not be the difficulty of removing the twenty-eight cottages of the complainants as a single transaction, the allegations are not inconsistent with the probability that some if not all of the complainants, had they acted expeditiously and separately, might have taken their cottages off the lots before the termination of the leases.  From the allegations of the bill it appears that in this, as in other matters in the premises, they acted jointly.  It is alleged that "the complainants through their agents and representatives entered into a contract for such removal on or about April 8, 1924".  This was twenty-one days after the complainants had received notices of the termination of their leases.  It is apparent, however, from the allegations of the

bill that the chief obstacle to the removal of the cottages was the lack of a place to put them when taken from the lots, rather than the failure to secure moving facilities. When either of the complainants accepted his lease he knew that upon its termination, if he was to avail himself of the privilege of removing his cottage entire, he must procure some other land upon which to place it.

In the situation created by the notices of the respondents, again the complainants elected to act in concert. They organized a corporation, and through it negotiated for the purchase of a tract of land to which they might remove their cottages. Through delays in completing the transaction, for which the respondents were not responsible, the corporation did not acquire this land until some day in May, 1924, subsequent to the termination of the leases and subsequent to the day of the alleged contract for the removal of their cottages. In our opinion the allegations do not present a ground of accident or mistake which would entitle the complainants to relief. The case of *Oesting* v. *New Bedford*, 210 Mass. 396, is somewhat similar to that at bar. In the facts of that case it appears that the plaintiff had in February of a certain year conveyed a lot of land to the city of New Bedford. The deed contained the following reservation: "All buildings to be removed from these premises on or before July 1 next by the grantor or his assigns." The grantor did not remove the buildings before July 1, alleging that he was unable to do so because he could not obtain a mover. The city after that date denied his right. The plaintiff sought relief in equity against a forfeiture of the building. The court held that: "The nature of the contract expressly made the time of performance essential and his right to the property depended upon it. The plaintiff showed no equitable circumstances of accident or mistake under which relief should be given." The complainants seek to distinguish that case upon its facts from the one at bar, but it is clearly an authority here for the proposition that the inability to obtain a house mover does

not amount to accident or mistake which will excuse a failure to act within the time made material by the parties. *Brown* v. *Vandergrift,* 80 Pa. St. 142; *Drown* v. *Ingels,* 3 Wash. 424; *Westerman* v. *Dinsmore,* 68 W. Va. 594.

Complainants also appear to allege as a ground of relief that they have been informed that the respondents also entered into negotiations for the purchase of the land which was afterwards secured by the corporation organized by these complainants, and that said negotiations by the respondents had the effect of delaying the complainants in obtaining said land. The complainants do not allege fraud or evil intent on the part of the respondents in this regard and said allegation sets out no ground for relief.

The complainants' appeal is denied. The decree of the Superior Court dismissing the bill is affirmed. The cause is remanded to the Superior Court.

*Green, Curran & Hart, Patrick P. Curran, William Williams, William C. Crossley,* for complainants.

*Jeremiah A. Sullivan, Frank E. Smith,* for respondents.