Argued February 18; reversed March 11, 1947

## RAINEY *v.* QUIGLEY
(178 P. (2d) 148)

*Thomas Boeke,* of Redmond, for appellant.

*Robert H. Foley,* of Bend (DeArmond, Goodrich & Foley, of Bend, on brief), for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey, Hay and Winslow, Justices.

LUSK, J.

Under date of April 1, 1945, plaintiff, as lessee, and defendant, as lessor, entered into a lease in writing

of real property in the Original Townsite of Redmond, Deschutes County, Oregon, for a term of five years commencing April 1, 1945. On July 22, 1946, plaintiff was served with a copy of summons and complaint in a forcible entry and detainer action commenced by defendant in Justice's Court for the restitution of the leased premises. On July 26, 1946, plaintiff brought this suit in equity in the Circuit Court for Deschutes County to enjoin the prosecution of such forcible entry and detainer action. After a trial the Circuit Court entered a decree granting the relief sought, and defendant has appealed.

The case presents the important question whether, in view of the provisions of § 8-309, O. C. L. A., equity will relieve from the forfeiture of a lease for failure of the tenant to pay the stipulated rent within the time fixed by the statute.

By the terms of the lease the lessee promised to pay to the lessor as rent ''the sum of Ninety Dollars ($90.00) on or before the 1st day of April, 1945, and a like sum on or before the 1st day of each month thereafter up to and including the 1st day of March, 1950''. The instrument did not, by its own terms, provide for a forfeiture in case of failure to pay the rent punctually as agreed.

The case was submitted to the court upon a stipulation of facts as follows:

> ''That the lease mentioned in plaintiff's complaint and attached as Exhibit 'A' thereto, was made and entered into by the parties hereto and the plaintiff entered into possession of the premises mentioned in said lease on or about the 1st day of April, 1945. That the dates of payment of monthly rentals as set forth in said complaint are true and correct; that the action of forcible entry

and detainer mentioned in said complaint was commenced on the 22nd day of July, 1946. That at that time, the monthly rental for the month of July, 1946, had not been paid by the plaintiff in this suit. That the defendant at no time during the existence of this lease has given notice to the plaintiff that said lease would be terminated if payments thereunder were not made upon the dates mentioned in said lease.

"That tender of the rental for said month of July, 1946, was made by the plaintiff herein to the defendant herein, after the commencement of said action of forcible entry and detainer and after his commencement of this suit.

"That said tender was sufficient as to amount and said tender was refused by the defendant. That payment of the amount of said tender into Court is waived by the defendant.

"That the parties hereto stipulate and agree that the sum of $100.00 is a reasonable sum to be paid as attorneys fees to the prevailing party in Circuit Court.

"That if appeal is taken from the decree of the Circuit Court, that an additional amount of $150.00 shall be reasonable to be awarded by the Court to the prevailing party in this suit for the appeal in the Supreme Court. That is to say, that in the event of an appeal, the prevailing party upon appeal shall be entitled to reasonable attorneys fees in the total sum of $250.00."

The allegation of the complaint (the correctness of which is admitted in the foregoing stipulation) as to the dates on which payments of rent were made by plaintiff shows that, during the sixteen months that the lease was in effect prior to July, 1946, no payment of rent was made at a date earlier than the twenty-third day of the month in which it became due. The plaintiff alleges in his complaint "that defendant

made no objection whatsoever to the plaintiff's paying the rentals or lease monies at this period and the plaintiff relied upon the defendant's failure to object to the rental being so paid and was lulled into a sense of security thereby as to the time of payment of the monies due the defendant under the present lease agreement.'' And the plaintiff contends that it would be inequitable to permit the defendant to enforce a forfeiture of the lease for a mere failure to pay the rent promptly, which can be adequately compensated.

The defendant, on the other hand, relies upon the statute, which provides:

> ''The failure of a tenant to pay the rent reserved by the terms of his lease for the period of ten days (unless a different period be stipulated in the lease) after the same becomes due and payable, shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful; provided, however, if the landlord shall, after such default in payment of rent, accept payment thereof, such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by subsequent defaults in payment of rent.'' § 8-309, O. C. L. A.

■ Courts of equity have long recognized a distinction between forfeitures agreed upon by the parties and those provided by statute. Equity may relieve from the former, but not from the latter. The earliest reported case seems to be *Peachy v. The Duke of Somerset,* 1 Str. Rep. 446 (1721), which was a bill by a copyholder to be relieved from a forfeiture of his estate for making leases contrary to the custom of the manor, and for

other breaches. Lord Chancellor Macclesfield there said:

> "Cases of agreements and conditions of the party, and of the law, are certainly to be distinguished; you can never say the law has determined hardly, but you may say that the party has made a hard bargain."

Lord Chancellor Manners, in *Keating v. Sparrow,* 1 B. & B. 367 (1810), applied this principle to a case where a tenant neglected to pay certain fines for a renewal of his lease. A statute provided that a court of equity could relieve such a tenant upon adequate compensation being made "unless it shall be proved to the satisfaction of such Courts that the landlord, or lessors, or persons entitled to receive such fines, had demanded such fines from such tenants or their assigns, and that the same had been refused or neglected to be paid, within a reasonable time after such demand." The Lord Chancellor said that the principle that equity leans against forfeitures "is applicable to cases of contract between the parties, but not to the provisions of an act of Parliament"; and, after quoting the above language from *Peachy v. The Duke of Somerset,* said:

> "Taking then the principle from Lord Macclesfield, it is manifest that in cases of mere contract between parties, this Court will relieve, when compensation can be given, but against the provisions of a statute no relief can be given. Apply that to cases arising under this act of Parliament. Here, before a demand made by the landlord upon the tenant to renew after the fall of a life, the tenant would be entitled to a renewal upon making compensation, whatever time may have elapsed, it being then but in contract; but after a demand by the landlord, the provisions of the statute apply,

it then ceases to be merely a contract between the parties, and comes within the opinion of Lord Macclesfield, that relief cannot be given against the provisions of the law.''

These two cases have been frequently cited and relied on by the courts and authoritative text writers of this country as enunciating the correct rule of law upon this subject.

*Smith v. Mariner,* 5 Wis. 551, 68 Am. Dec. 73, involved a purchase of school land from the state pursuant to statute which provided that in case of nonpayment of principal or interest when due the purchaser should forfeit all right or interest in the land. A purchaser, asserting the existence of certain equitable circumstances, sought to be relieved from a forfeiture which had been enforced by the state for failure to pay interest when due. He claimed, as does the plaintiff here, that, since the object of the forfeiture was to secure the payment of the unpaid purchase money, the case fell within the principle applicable to all cases of penalties and forfeitures intended to secure the payment of money only. The court held otherwise, saying, in substance, that where the law prescribes there shall be a forfeiture the court cannot say there shall be none; that the expression of the legislative will was most clear and explicit; and was not to be defeated upon the ground that the law is harsh and severe in its character.

A number of Missouri cases applied the same principle to leases of their lands made by cities pursuant to authority granted by legislative acts which contained provisions for forfeiture for nonpayment of rent as agreed. *Woodson v. Skinner,* 22 Mo. 13; *Taylor v. Carondelet,* 22 Mo. 105; *Carondelet v. Lannan,* 26 Mo. 461; *City of Carondelet v. Wolfert,* 39 Mo. 305.

In *New Mexico Motor Corp. v. Bliss,* 27 N. M. 304, 201 P. 105, the court recognized the difference between a forfeiture imposed by statute and one arising under the contract of the parties. A tenant sued to be relieved from a forfeiture for nonpayment of rent, and the court stated:

> "The statute expressly by its terms works a forfeiture, and, after the forfeiture is complete, a court of equity would have no power to grant relief."

But, since the landlord had failed to give notice required by other provisions to make the forfeiture complete, the statute which imposed a forfeiture was held not to be applicable.

The Supreme Court of the United States has applied the principle to the forfeiture of a bond required by a statute conditioned for the completion of a railroad. *Clark v. Barnard,* 108 U. S. 436, 27 L. ed. 780, 2 S. Ct. 878. In that case the court said:

> "Accordingly, where any penalty or forfeiture is imposed by statute upon the doing or omission of a certain act, there courts of equity will not interfere to mitigate the penalty or forfeiture, if incurred, for it would be in contravention of the direct expression of the legislative will."

To the same effect see *Farnsworth v. Minn. & P. R. R. Co.,* 92 U. S. 49, 68, 23 L. ed. 530; *United States v. Denver & R. G. W. R. Co.,* 16 F. (2d) 374, 377; *Gas & Electric S. Co. v. Manhattan & Queens Traction Corp.,* 266 F. 625, 640. Other authorities supporting the general rule are *Powell v. Redfield,* 4 Blatch. 45; *Mitchell v. Long,* 9 Ohio N. P. (N. S.) 113, 125; *State v. Hall,* 70 Miss. 678, 13 So. 39; 3 Story's Eq. Jur. (14th ed.) 359, § 1739; 2 Pomeroy, Eq. Jur. (5th ed.) 311, § 458;

30 C. J. S., Equity, 394, § 56; 21 C. J., Equity, 103, § 79; 19 Am. Jur. 107, § 99.

The effect of § 8-309, O. C. L. A., has been considered by this court in three cases. In *Clanton v. Oregon Kelp-Ore Co.*, 135 Or. 321, 331, 296 P. 30, one of the questions was whether a lessee had forfeited his lease by breach of its covenants. At page 331 the court said "that a breach of the ordinary covenants of a lease, in the absence of an express forfeiture clause, will not justify a forfeiture. This rule, however, has been modified by the statute of this state in regard to payment of rent" (quoting § 8-309). But the statute was held to be not applicable because the lease did not fix a definite amount of rent nor a definite time when it should become due. The statute was next considered in *Francis v. Schallberger*, 137 Or. 529, 3 P. (2d) 530, 83 A. L. R. 108, but the decision has little, if any, bearing on the case at bar. In *Title & Trust Co. v. Durkheimer Co.*, 155 Or. 427, 444, 63 P. (2d) 909, 64 P. (2d) 834, which was a suit in equity to be relieved from the forfeiture of a lease, the plaintiff argued, among other things, that the lessor, by accepting payments of rent after they became due, waived prompt payment of future rent in accordance with the terms of the lease. The court, in rejecting this contention, quoted the statute. The circumstances of that case, however, were such that we do not regard it as conclusive of the question here presented.

Counsel for the plaintiff cite 32 Am. Jur., Landlord and Tenant, 725, § 855, and the following cases: *Donaldson v. Abraham*, 68 Wash. 208, 122 P. 1003; *Worthen v. Ratcliffe*, 42 Ark. 330; *House v. Lewis*, 108 Neb. 257, 187 N. W. 784, 23 A. L. R. 877; and *Farmer v. Pitts*, 108 Neb. 9, 187 N. W. 95, 24 A. L. R. 719.

The text of American Jurisprudence on which the plaintiff relies is as follows:

"Provisions for the forfeiture of a lease for nonpayment of rent, whether contractual or statutory, are considered in equity as securing the rent, and not as providing for the forfeiture of the lease where the tenant acts in good faith and pays promptly on demand."

The editors cite in support of the text *Farmer v. Pitts,* supra, and *House v. Lewis,* supra. In 30 C. J. S., supra, the cases of *Donaldson v. Abraham,* supra, and *Worthen v. Ratcliffe,* supra, are referred to as exceptions to the general rule. *Donaldson v. Abraham* was a suit by a firm of contractors to be relieved from the forfeiture of the amount of a certified check which accompanied their proposals for the performance of certain public work. The statute required the deposit of a certified check by the bidder in an amount equal to five per cent of his bid, which should be forfeited if the bidder refused to enter into a contract for the performance of the work, in case the contract should be awarded him. Without citation to any authority the court said:

"Equity has the same power to relieve from forfeitures provided for by statute as it has to relieve from forfeitures provided for by ordinary contract."

The only authorities cited in the opinion are: *Moffett, Hodgkins, etc., Co. v. Rochester,* 178 U. S. 373, 44 L. ed. 1108, 20 S. Ct. 957; *Board, etc. v. Bender,* 36 Ind. App. 164, 72 N. E. 154; and *Harran v. Foley,* 62 Wis. 584, 22 N. W. 837. These were all cases involving facts similar to those in *Donaldson v. Abraham.*

In none of them was the question of relief from a statutory forfeiture discussed, because the basis of all these decisions is, that, owing to a mistake of the bidder, as the court said in *Board, etc. v. Bender,* supra, ''the minds of the parties never met'', and consequently the contingency which would give rise to a forfeiture had never arisen. The language which we have quoted from Donaldson v. Abraham was not apposite, and the decision itself is, as we view it, not authority for the dictum.

In *Worthen v. Ratcliffe,* supra, the court held that equity would relieve from a statutory forfeiture resulting from the failure of the donee of state lands to make payment of double the value of improvements on such lands to the owner thereof. The requirement of payment was held to be a condition subsequent, and ''the law permits the estate to endure after breach of the condition, however absolute the words of the forfeiture may be, until the grantor, his heirs or successors, enters and avoids the estate.'' 42 Ark. 347. The distinction between contractual and statutory forfeitures was not mentioned in the opinion nor in the briefs of counsel, which are reported with the case.

*House v. Lewis,* supra, was a forcible entry and detainer action brought for failure to pay rent. The statute provided:

''A tenant shall be deemed to be holding over his term whenever he has failed, neglected, or refused to pay the rent or any part thereof when the same became due.''

The Nebraska court held that the tenant had not breached the lease because it was the duty of the landlord to demand payment of rent on the leased premises,

which he had not done. The question of relief from a forfeiture was not reached.

The decision in *Farmer v. Pitts,* supra, was upon two grounds: First, that, under the facts, there was no refusal, failure or neglect on the part of the tenant to pay the rent when due; and, second, that, even though there was a default, it was technical and inconsequential, and equity would relieve against the forfeiture. The Nebraska statute, which is quoted above, was said to be for the security of rental to the lessor. The rule as to statutory forfeitures was not even mentioned.

We are not persuaded by the foregoing decisions that we would be justified in refusing to accept a principle of law which has met with the approval of such eminent legal scholars as Story and Pomeroy and is sanctioned by the numerous adjudications of the courts of this country and Great Britain to which we have referred. As far as the reason of the thing goes, we have seen no adequate answer to the proposition that a court of equity may not defeat the legislative will upon the ground that the law is harsh and severe in its character. *Smith v. Mariner,* supra. The defendant argues that in most of the cases involving statutory forfeitures the forfeiture provided is in favor of the state or other political subdivision. Whether that be an accurate statement or not, the validity of the principle would not for that reason be impaired. The doctrine was not invented for the benefit of governments, and the fact remains that *Peachy v. Somerset* and *Keating v. Sparrow,* the cases to which it may be said to trace its origin, were contests between individuals standing in the relationship of landlord and tenant.

The argument of the plaintiff may be thus summarized: Forfeitures are not favored by equity. Where strict performance of an agreement to pay rent has been waived for a considerable period of time, notice must be given of an intention to return to the strict terms of the lease before a forfeiture can be declared. The statute is not self-executing, and the conduct of the defendant in accepting past due payments of rent rendered the statute ineffective. As the result of such conduct the plaintiff was "lulled into a sense of security", and led to believe that the defendant would not exercise her right of forfeiture for nonpayment of rent on the day fixed by the lease.

■ A provision for forfeiture in a lease for failure to pay rent is generally considered in courts of equity as designed to secure payment, and the court will ordinarily relieve against a forfeiture for such cause upon payment of the sum secured, with interest. Bennett, Law of Landlord and Tenant, 142, § 93; 2 Tiffany, Landlord and Tenant, 1412, § 194. So that, if this case involved nothing more than the contract of the parties, there would be no doubt of the jurisdiction and power of the court to grant the relief which the plaintiff seeks. But, unless we are to ignore or rewrite the statute, that power cannot be exercised here, for, under the statute, the failure of the tenant to pay the rent reserved within the time prescribed "shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful." Nor can the acceptance of delinquent payments in previous months alter the case, because "such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by

subsequent defaults in payment of rent.'' How, then, can it be said that the plaintiff was ''lulled into a sense of security'', when the law warned him that he would not be secure in the event of a subsequent default?

Or how can the court hold that the defendant should have given notice when the statute says that no notice is required? The acceptance of delinquent payments in months prior to July, 1946, and the failure to give notice are the only *facts* shown as constituting the foundation of the plaintiff's alleged equity. Although the plaintiff alleged in his complaint that the defendant did not object to payment of rent after it became due, the stipulation of facts does not support that allegation. There is no evidence that the defendant did anything which could be relied on by the plaintiff as indicative of an intention of the defendant to depart from or waive the strict terms of the lease and of her rights under the statute. There was no mistake on the part of the plaintiff, fraud on the part of the defendant, or any act of hers which would create an estoppel. The effect of the acceptance of past due rent was merely to reinstate the lease, not to impair the lessor's statutory rights.

■ When, therefore, the plaintiff failed to pay the July, 1946, rent within the time given by the statute, his tenancy terminated, his holding thereafter was wrongful, and the defendant was entitled to maintain her action of forcible entry and detainer to recover possession of the premises. The forfeiture resulted from the operation of the statute, and, where that is the case, courts of equity, as the Supreme Court of the United States said in *Clark v. Barnard,* supra , ''will not interfere to mitigate the penalty or forfeiture, if in-

curred, for it would be in contravention of the direct expression of the legislative will.''

If the result be harsh, it is because of the statute, which only the legislature has the power to change.

The lease provides:

''In the event that this lease or second party's occupation of said premises shall give rise to any suit or litigation between the parties hereto, the prevailing party in such suit or litigation shall be entitled to his or her reasonable attorney's fees.''

By their stipulation the parties agreed that the sum of $100.00 is a reasonable sum to be paid as attorney's fee to the prevailing party in the Circuit Court, and, in the event of an appeal, that an additional amount of $150.00 is a reasonable sum to be awarded as attorney's fee to the prevailing party in the Supreme Court. The stipulation continues:

''That is to say, that in the event of an appeal, the prevailing party upon appeal shall be entitled to reasonable attorneys fees in the total sum of $250.00.''

The parties are agreed that these provisions of the lease and the stipulation should be given effect.

For the reasons hereinabove stated, the decree of the Circuit Court will be reversed and a decree entered here dismissing the suit and awarding the defendant judgment in the sum of $250.00 attorney's fee against the plaintiff. Neither party will be allowed costs or disbursements.