Argued October 25, 1948; affirmed February 15, 1949

## CAINE *v.* POWELL

202 P. (2d) 931

*Carl Helm, Jr.*, argued the cause for respondents. On the brief were Helm & Helm, of La Grande.

*S. H. Burleigh* argued the cause for appellant. On the brief were Dixon & Burleigh, and R. D. H. Swindley, of La Grande.

Before ROSSMAN*, Chief Justice; and LUSK, BELT, BAILEY and HAY, Justices.

LUSK, C. J.†

The purpose of this suit is to obtain relief from the forfeiture of a lease for failure on the part of the lessees to pay an installment of rent within the time stipulated in the lease. The court entered a decree in accordance with the prayer of the complaint, and the defendant appeals.

The lease in question was entered into under date of September 16, 1947, between Marion M. Powell, the

---

\* Chief Justice when this case was argued.
† Chief Justice when this opinion was rendered.

defendant, as lessor, and Roy Caine and Rose Caine, husband and wife, the plaintiffs, as lessees. The demised premises comprise space in the Foley Hotel Building in La Grande, Oregon, used for restaurant purposes and known as the Stein Coffee Shop. The term is from October 1, 1947, until March 1, 1951; the rent reserved is $50.00 per month up to June 30, 1949, and thereafter $100.00 per month payable in advance on the first day of each month. The lease contains this provision:

"PROVIDED ALWAYS that these presents are upon this express condition, that if the lessees shall fail, neglect or refuse to perform all, or any part, of the covenants herein contained on their part to be observed and performed, or if the above mentioned rental, or any installment thereof, shall be in arrears and unpaid for a space of ten (10) days thereafter after the same shall become due, then upon a breach or non-performance of any of the covenants herein contained on their part to be observed and performed, and while such breach or default shall continue, the lessor or his agent or legal representative may immediately and without any further notice or demand, enter into and upon said premises and any part thereof in the name of the whole and repossess the same of his former estate and expel the lessees and those claiming under them, forcibly if necessary, and without being taken or deemed guilty of trespass in any manner or without prejudice to any other remedies which may otherwise be used for arreas of rent or proceeding for breach of covenant, and said lessees hereby waive any and all statutory notice to quit said premises."

Plaintiffs allowed the January, 1948, installment of rent to become delinquent. On January 13, 1948, the defendant served them with a notice to vacate, and

on January 16, 1948, commenced a forcible entry and detainer action against them in the Justice's Court for La Grande District, Union County, Oregon, to recover possession of the leased premises. Immediately after receiving the notice to vacate plaintiffs tendered to defendant the amount of the January rent with interest. The tender was refused. On January 22, 1948, plaintiffs commenced this suit to enjoin the defendant from interfering with their possession of the premises and from prosecuting the forcible entry and detainer action. The tender was renewed and the money brought into court. As stated, the court granted the relief prayed for.

Numerous facts are alleged in the complaint as the basis for equitable relief. Among other things it is alleged:

"That it was the custom and habit of the plaintiffs for plaintiff Roy Caine to pay all of the bills incurred by the business while plaintiff Rose Caine paid no attention thereto, but plaintiffs had prior to the date of the lease plead as Exhibit 'A' leased the premises referred to therein and certain additional premises under another lease which provided for re-entry by the lessor on non-payment of rent for a period of thirty days after it became payable rather than after a ten-day period as in Exhibit 'A' provided, and upon the execution of the present lease, Exhibit 'A', plaintiff Roy Caine was advised that said lease, Exhibit 'A', was in all respects the same as the former lease except that said Exhibit 'A', provided for a back door entrance to the leased premises and that the premises leased were reduced in size. That said Roy Caine was under the impression and belief at all times prior to the service of Exhibit 'B' that said lease provided for a thirty-day period of grace in the payment of rent."

The evidence shows that for some time before the execution of the lease here involved plaintiffs had been in possession of the space in the Foley Hotel Building known as the Stein Coffee Shop and also of other space known as the Fireside, under a lease between a former owner of the hotel property, Ada B. Phy, and J. L. and K. M. Cunningham, and which was assigned to the plaintiffs on February 20, 1946. This prior lease provided for a thirty-day period of grace for the payment of rent instead of ten days. During the continuance of this tenancy, the plaintiffs, the defendant and one Harold A. Decker agreed that the plaintiffs would surrender the Fireside, that Decker would take a lease of that space, and that a new lease should be drawn covering the Stein Coffee Shop to be retained by the plaintiffs. This lease, being the one now sought to be forfeited, was drawn by Mr. Dixon, an attorney who represented the lessor, the defendant herein. The plaintiff, Roy Caine, testified as follows concerning the transaction:

"Q (MR. HELM, JR.) Mr. Caine, you have alleged in your complaint it was your impression that the lease, that is the second lease, covering the property—the one which you have set out as Exhibit 'A' in the complaint—provided for a thirty-day period of grace in the payment of rent. Will you tell the Court whether or not that is correct?

* * *

"A When we went up, Powell, Decker, my wife and myself, to make this transfer of the Fireside Rooms—I believe Mr. Dixon was the attorney, and he wanted to draw up a new lease. At the time I told him, I said, 'The old lease is good enough for me.' But it seemed as though they wanted me to release the Fireside room, instead of leasing it back to Powell, and he told me, 'We will just elim-

inate all these names, Cunningham and Mrs. Frye, and make it between you and Powell. We will make a new clause to put in a new door to your store room, giving you access to the alley, and one or two little items, but if we draw up a new lease the terms of the lease will be exactly the same as it is in your former lease.' I glanced over the lease, and looked to see if they had put in the clause in there for the door, and everything—and I took Dixon's word for it that it was the same, and I missed the ten-day clause,—the ten-day grace period, in there. He told me, and I am sure Powell and Decker and I know my wife—heard him, when he said the terms of the lease would be the same, outside of the fact they released the Fireside room back to Powell, and put these clauses in—to put the door in, and other items; and that is what I was looking for in the lease, and taking his word for it I missed the ten-day clause in there.

"Q Did you know, on either the tenth of January this year, or the thirteenth of January, and prior to the time of the service of the eviction notice on you, that your lease set up a ten-day grace period?

"A I didn't know it."

The defendant was asked "Did you at any time ever tell Mr. Caine, or did you ever hear anyone tell him that the new lease drawn between you was just exactly like the old one, with the exception of certain specified changes?", and answered the question in the negative. Mr. Dixon, the attorney, was not called as a witness. The trial judge made no findings, but his opinion filed in the case stating the grounds of a decision overruling a demurrer to the complaint, indicates that the decree is based upon reasons which do not in any way involve the issue under consideration, and therefore that he did not pass on the conflict in the evidence or the credibility of the witnesses. In this

situation we find from our examination of the evidence that the plaintiff, Roy Caine, was under the mistaken belief induced, innocently we have no doubt, by the statement of the defendant's attorney, that the lease provided for a period of thirty days after the first of the month in which to pay the rent.

Section 8-309, O. C. L. A., provides:

"The failure of a tenant to pay the rent reserved by the terms of his lease for the period of ten days (unless a different period be stipulated in the lease) after the same becomes due and payable, shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful; provided, however, if the landlord shall, after such default in payment of rent, accept payment thereof, such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by subsequent defaults in payment of rent."

■ The defendant relies upon this statute and our decision construing it in *Rainey v. Quigley*, 180 Or. 554, 178 P. (2d) 148, 170 A. L. R. 1149. That case had to do with a lease which contained no provision for forfeiture in the case of failure to pay rent. The lessee's default in failing to pay within the ten-day statutory period resulted in a suit to be relieved from forfeiture similar to this suit. The particular ground of relief asserted was that over the entire period of the lease the lessor had accepted payments of rent after the expiration of the statutory period and that the lessee "was lulled into a sense of security thereby as to the time of payment of the monies due the defendant under the present lease agreement." We held for the lessor because of the well-established rule that equity will not re-

lieve from a statutory forfeiture. We pointed out that the very basis of the lessee's claim was cut under by the concluding language of the statute that "if the landlord shall, after such default in payment of rent, accept payment thereof, such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by subsequent defaults in payment of rent." § 8-309, O. C. L. A. But we did not hold that there could not be circumstances under which the jurisdiction of equity might be invoked against an exercise of the right of forfeiture under the statute, and we were careful to point out that in the case before us "there was no mistake on the part of the plaintiff, fraud on the part of the defendant, or any act of hers which would create an estoppel." (180 Or. 566, 178 P. (2d) 153).

■ We do not agree with the contention that the provisions of the statute were waived because the lease now under consideration provides for a forfeiture in the event that the lessees shall allow any installment of rent to become in arrears for a space of ten days after it becomes due. Under the statute the failure of a tenant to pay the rent reserved for a period of ten days after the same becomes due operates to terminate the lease "unless a different period be stipulated in the lease". The period in this lease is not different from, but the same as, that in the statute, and the provisions of the lease giving the landlord the right to re-enter upon a default add nothing to, nor do they differ from, the rights granted him by the statute. It cannot be said that the express incorporation into the lease of what are substantially the provisions of the statute affected in any way the applicability of the statute.

We are met, however, in this case with a question not presented in *Rainey v. Quigley*. This is not merely a case of failure, unaccompanied by other circumstances calling for the interposition of a court of equity, to pay an installment of rent within the statutory time. It is not a case where reliance is placed upon acceptance by the landlord of past-due installments of rent in previous months. It is a case in which the proof establishes that the lessees were misled by a representation of the lessor's agent into believing that the lease provided for a longer period of time in which to pay the rent than the statutory period, and in which payment was promptly tendered upon discovery of the mistake, so that, if relief from the forfeiture is granted, the lessor will not have been injured in the slightest degree. Under such circumstances we think that the rigorous provisions of the statute ought not to be applied and were not intended to be, and that a solution should be found agreeable to the elementary principles of justice through the exercise of the court's equitable powers.

The jurisdiction of equity in such a case is well established.

"If a lessee's breach of his covenant is the result of the fraudulent conduct of the lessor, the latter will not be permitted to avail himself thereof as a ground for forfeiture, and although the lessor may not have been guilty of actual fraud, if his conduct has been such as to mislead the tenant and render it inequitable to enforce the forfeiture, equity will grant relief. Generally, also, where the breach of the tenant's covenant causing a forfeiture of the term is due to excusable accident or mistake, this may constitute ground for equitable relief under the general power of equity to grant relief in the case of accident or mistake." 32 Am. Jur.,

Landlord and Tenant, 756, § 892. See, also, 2 Pomeroy, Eq. Jur. (5th ed.) 283, § 451.

■ Cases illustrating the principle may be found in notes to the texts cited, but, as none are precisely in point on their facts, it will serve no useful purpose to review them. Note, however, should be taken of the limitation on the rule as stated in Pomeroy, idem, p. 285: "However, even where accident or mistake is shown, a court of equity should not grant relief from a forfeiture unless it can be done with justice to the other party." Since, in this case, the defendant was tendered his rent with interest within about three days after the expiration of the period of grace provided in the statute, it is manifest that he will not suffer an injustice through the granting of the relief sought.

■ It is true that the plaintiff, Roy Caine, was negligent in failing to read his lease, and that in some instances such negligence may stay the hand of the court. This court, however, has approved the doctrine that "each instance of negligence must depend to a great extent upon its own circumstances", and that "even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." *Welch v. Johnson,* 93 Or. 591, 600, 183 P. 776, 184 P. 280. See, also, *DeWolfe v. Kupers,* 106 Or. 176, 183, 211 P. 927. And a court of equity should be the more inclined to excuse a party's negligence in a case like the present one, where not only has the landlord insisted upon literal compliance with the terms of a statute which may be put to harsh uses, as in *Rainey v. Quigley,* but has done so with the knowledge, as disclosed by the evidence, that his tenants during the first ten days of January, 1948, the month when the de-

linquency occurred, expended several hundred dollars in painting and redecorating the leased premises and thus enhancing their rental value. "Forfeitures are odious, and courts struggle against them". *Kopper v. Dyer,* 59 Vt. 477, 483, 9 Atl. 4, 59 Am. Rep. 742.

Without departing from the principles upon which *Rainey v. Quigley* was decided, and without any intention to disturb that decision as a precedent when considered in the light of the facts to which it applied, we are of the opinion that the plaintiffs, in view of the circumstances of this case, are entitled to the equitable relief prayed for, and the decree of the Circuit Court is, therefore, affirmed.

HAY, J., did not participate in the decision of this case.

ROSSMAN, J., dissents.