Argued June 5, affirmed June 20, 1951

## LOE *v.* KLEIN ET AL.

233 P. 2d 209

*George A. Rhoten* argued the cause for appellants. On the brief were Rhoten & Rhoten and Sam F. Speerstra, all of Salem.

*Roy R. Hewitt,* of Salem, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and HAY, ROSSMAN and LATOURETTE, Justices.

HAY, J.

Suit in equity for relief, on the ground of excusable accident or mistake, against forfeiture of a lease of real property, and for an injunction.

Defendants, on April 4, 1945, entered into a written agreement whereby they leased to plaintiff 140 acres of land, more or less, in Marion County, Oregon, for the period from April 4, 1945, to and until October 1, 1953. The agreed rental was (a) $1,000 cash upon execution of the lease, which was duly paid and was agreed to be in full for the period from April 4, 1945, to October 1, 1945; (b) thereafter an annual rental per acre, payable in arrear on October 1 each year, based upon the price per pound of chewings fescue grass seed, of a certain standard of purity and germination, being offered to growers as of September 15 or 16, in accordance with a formula which is laid down in the lease, which formula included a sliding scale for variation downward proportionally in any year when the price offered for such seed should be less than 72 cents per pound. It is apparent from the peculiar character of the rent formula that it was the intention of the parties that the premises were to be used by the defendant for the production of grass

seed. The landlords reserved the right to terminate the lease by reentry for default in payment of rent.

The evidence shows that in order to establish a crop of grass for seed production purposes, it is necessary that the land be cultivated with extraordinary thoroughness. This is done in order to make the land, as far as possible, clean and free from weeds. Sometimes this process requires two or three seasons of cultivation. No financial return is derived from the land until it has been practically freed of weeds and is producing a stand of the desired grass. Once established, the stand of grass may be maintained for several years without renewal. The establishment of such a grass crop represents a very considerable investment in time, labor and expense. Not only is plowing and summer fallowing for at least one year involved, but also it is necessary to eradicate casual weeds by hand-hoeing. Indeed, in the present case the evidence is undisputed that at the time when, as hereinafter stated, the landlords reentered the premises, the tenant had by his operations added approximately $10,000 in value to the premises.

From April 4, 1945, to and including October 1, 1949, the tenant occupied and operated the premises, paid his rent promptly when due, and developed a turf of chewings fescue grass upon all but about 22 acres. He had thus, as he testified without contradiction, brought the operation—which was necessarily a long-range one—to a point at which he might expect to begin to realize some return from his investment. On October 1, 1949, the tenant was ready, willing and able to pay the rent which, under the terms of the lease, was due on that day, but, through inadvertence and mistake, he thought and believed that such rent was

not due until October 15, and therefore failed to pay or tender it on October 1. His mistake was due to his having confused the due date with the date (September 15) as of which the rate of rental was to be determined.

On October 10, 1949, C. E. Klein, one of the defendants, in plaintiff's absence, made a reentry upon the premises, and began plowing a field of about 22 acres upon which a grass crop had not yet been developed. Thereafter, on the morning of October 11, 1949, the same defendant, who, it was conceded, was representing all the defendants, telephoned plaintiff and inquired about the unpaid rent. A conversation ensued in which plaintiff stated that he thought the rent was not due until the 15th. Upon being convinced of his error, plaintiff, on that day, traveled to the home and farm of defendants (the leased premises being a part thereof) and found defendant C. E. Klein in process of plowing the 22-acre field. He thereupon, as he testified, estimated what would be a reasonable compensation for such plowing, added that sum to the annual rent which was due, deducted therefrom the sum of $56.50 which was owing him by defendants, and gave Mr. Klein a check for the sum thus computed, or $1,393, as payment for both rent and plowing. This check was cashed by defendants in due course. There was, in fact, some attempt by defendants, at the hearing, to question whether or not plaintiff's computation correctly included payment for plowing, but, at the least, they conceded that, on October 11, 1949, the rent was paid in full. Thereafter plaintiff, on rechecking his figures, decided that he should have paid for the plowing of the entire 22-acre field instead of about one-third of it upon which, he said, his figures were

based, and therefore, the next day, he gave defendants a check for an additional $184.80, which he intended to be in full payment for the plowing. . This check also defendants cashed in due course. Defendants, however, refused to surrender possession of the premises to plaintiff, and the latter thereupon instituted this suit.

Upon the hearing, defendant C. E. Klein, conceding that, on the part of defendants, he reentered the premises on October 10, 1949, testified: "We waited ten days and he didn't pay, so we went in and plowed it."

The trial judge found in favor of plaintiff, and entered a decree declaring his lease to be valid and subsisting and restraining and enjoining defendants from "continuing the reentry made by them on or about the 10th day of October, 1949, on plaintiff's leasehold, and from continuing possession of plaintiff's investment made under the terms of" said lease. Defendants petitioned for a rehearing, which was denied, and they thereupon appealed from the decree.

Section 8-309, O.C.L.A., provides as follows:

"The failure of a tenant to pay the rent reserved by the terms of his lease for the period of ten days (unless a different period be stipulated in the lease) after the same becomes due and payable, shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful; provided, however, if the landlord shall, after such default in payment of rent, accept payment thereof, such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by subsequent defaults in payment of rent."

■ The lease provided for payment of the rent on October 1. No period of grace was stipulated, and therefore § 8-309, O.C.L.A., is applicable and became, in effect, a part of the contract. Computed in accordance with our statute (§ 10-206, O.C.L.A., as amended by ch. 287, Oregon Laws 1949), plaintiff would not have been in default in payment of rent until midnight of October 11, 1949. Consequently, his payment of rent on October 11 was in due time, his covenant to pay rent was not breached, and defendant's reentry on October 10 was unlawful. It seems rather obvious, from the evidence, that defendants reentered the premises on the very day on which, as they erroneously computed, they might lawfully do so. In view of plaintiff's considerable addition to the value of the leased property through his investment of time, labor and money, and in view of the undisputed fact that plaintiff was at all times ready, willing and able to pay the rent and did so immediately upon demand, it would appear that defendants were determined to hold plaintiff to the exact conditions "nominated in the bond." ´ Their excuse seems to have been that the price of chewings fescue seed had dropped considerably, and that they thought they ought to be getting more rent for their land than the sliding scale allowed. In other words, they attempted to hold the lessee to, but themselves to evade, the exact letter of the lease.

■ The parts were mutually in error as to the status of their legal rights and liabilities in the premises, the defendants in assuming that they were entitled to rescind the lease by reentry upon October 10, 1949, and the plaintiff in assuming that, by failing to pay his rent on October 1, 1949, he subjected himself to

a forfeiture of his lease against which he needed equitable relief. Plaintiff's remedy was at law. He was entitled to have recovered possession of the premises by action in ejectment. § 8-201 et seq., O.C.L.A.

■ However, the parties joined issue upon the equitable allegations of plaintiff's complaint. Both parties asked for general equitable relief, and neither demanded a trial by jury. The question of the jurisdiction of the equity court, therefore, does not arise, and in fact has not been asserted. So, even if the plaintiff did mistake his remedy, under our system, in which law and equity causes are considered by one and the same court, and no cause may be dismissed for having been brought on the wrong side of the court (§ 9-102, O.C. L.A.), the court has jurisdiction to hear and determine the cause. *Oldenburg v. Claggett,* 142 Or. 238, 241, 20 P. 2d 234; *Mogul Transportation Co. v. Larison,* 181 Or. 252, 259, 181 P. 2d 139. We are of the opinion that, in effect, the decision of the court correctly disposed of the controversy.

■ The principal equitable issue which was raised by the pleadings was whether or not, and under what circumstances, equity will relieve against forfeiture of a lease for breach of covenant to pay rent. While it is not necessary to a determination of this case in its present posture, we are impelled to say that the jurisdiction of equity to relieve against either a contractual or a statutory forfeiture, upon a proper showing, was determined by this court in *Rainey v. Quigley,* 180 Or. 554, 557, 178 P. 2d 148, 170 A.L.R. 1149, and *Caine v. Powell,* 185 Or. 322, 328, 202 P. 2d 931, neither of which cases was cited by either of the parties.

The decree is affirmed, with costs.