335 A.2d 914.

THE HOUSING AUTHORITY OF THE CITY OF NEWPORT
*vs.* CONSTANCE MASSEY.

APRIL 16, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. In this civil action commenced in the Second Division District Court and heard de novo on appeal in the Superior Court, the plaintiff seeks to regain possession of certain premises leased by it to the defendant. The case is here on the defendant's appeal from a judgment on the pleadings for the plaintiff under Super. R. Civ. P. 12(c).

The plaintiff alleges in its complaint that it acquired the right, under G. L. 1956 (1969 Reenactment) §34-18-9, as amended by P. L. 1974, ch. 11, §1,[1] to recover possession

---

[1]The pertinent part of G. L. 1956 (1969 Reenactment) §34-18-9, as amended by P. L. 1970, ch. 7, §2, reads as follows:

"All suits for possession of lands, buildings or parts of buildings, under the provisions of this chapter shall be by the ordinary process of ejectment or otherwise as provided by law.

"(a) If, in any case of letting, whether by writing or parol, the stipulated rent, or any part of the same, be due and in arrear for a

of those premises because the defendant allowed the stipulated rent for the leased premises to remain in arrears for a period of more than 15 days and also because she failed to petition the Board of Tenants' Affairs for a hearing and review, though she had received the written notice required by G. L. 1956 (1970 Reenactment) §45-25-18.7 (2) advising her of the decision to terminate her tenancy and stating the reason therefor.[2]

In her answer defendant admits plaintiff's allegations but seeks to excuse her rent default and avoid eviction by claiming as defenses "that she experienced unusual financial difficulties," that although she tendered the overdue rent after receiving service of the summons and complaint in this action plaintiff refused to accept it, and that she now stands ready to pay both the arrearages and the rent currently due.

At the outset we decide whether, as defendant contends, the trial justice should have permitted her to offer evidence in support and clarification of the factual assertions contained in her answer, or whether instead it was proper for him to accept, as he did, the truth of those assertions for the purposes of the hearing on the motion for judgment on the pleadings. While defendant contends that the trial justice erred, it seems to us that for him to have permitted evidence to prove what he had already accepted

period of fifteen (15) days, whether demanded or not, the landlord or reversioner wishing to repossess himself of the lands, building or parts of buildings let, or recover possession of the same from the tenant, or any person holding under him, shall, without the necessity of notice, institute a trespass and ejectment action in the division of the Rhode Island district court, where the premises are situated."

[2]This notice was given despite our decision in *Housing Authority* v. *Fetzik*, 110 R. I. 26, 289 A.2d 658 (1972), holding G. L. 1956 (1970 Reenactment) §45-25-18.6(1)(C) unconstitutional. That section provides that the Board of Tenants' Affairs shall "[h]ear and determine, as a board of review, complaints arising under §45-25-18.7."

as true would have served no useful purpose and would have wasted valuable judicial time.

Of greater significance is the substantive issue of whether defendant's excuse for her nonpayment of the rent when due and her subsequent rent tender justify intervention by equity in order to prohibit plaintiff from regaining possession of its premises under §34-18-9 and thereby to sustain defendant's continued tenancy. The resolution of that issue depends in large measure upon whether a forfeiture or a right to terminate for nonpayment of rent arises under a lease between the parties or under legislation.

In cases where forfeiture is provided for in an agreement between the parties, the rule generally followed both here and elsewhere permits equity to intervene when circumstances of independent significance such as fraud, accident, mistake, or some other action by the landlord have prevented the tenant's payment of the rent when due or his seasonable performance of some other required act. *Kanakry* v. *Sayles Finishing Plants, Inc.*, 53 R. I. 455, 457, 167 A. 121, 122 (1933); *Dwelly* v. *Rocklin*, 47 R. I. 327, 331, 133 A. 85, 87 (1926); *Lea* v. *Vasco Products, Inc.*, 95 F.2d 59 (5th Cir. 1938); *Gordon* v. *Richardson*, 185 Mass. 492, 70 N.E. 1027 (1904); *Caine* v. *Powell*, 185 Ore. 322, 330-31, 202 P.2d 931, 934 (1949). Some courts go further and grant relief even in the absence of fraud, accident, or mistake, provided the rent arrearages with interest and legal charges are promptly tendered; the rationale for this view is that a forfeiture provision is usually inserted in a lease as security for the payment of money and that its purpose is therefore satisfied once that money is paid. *Sheets* v. *Selden*, 74 U. S. (7 Wall.) 416, 421, 19 L.Ed. 166, 168 (1868); *Bonfils* v. *Ledoux*, 266 F. 507, 510 (8th Cir. 1920); *Thompson* v. *Coe*, 96 Conn. 644, 655, 115 A. 219, 222-23 (1921); *Jud-*

*kins* v. *Charette,* 255 Mass. 76, 151 N.E. 81 (1926); *Farmer* v. *Pitts,* 108 Neb. 9, 13-14, 187 N.W. 95, 96 (1922). *See Kann* v. *King,* 204 U. S. 43, 54-55, 27 S.Ct. 213, 216, 51 L.Ed. 360, 365 (1907).

Equity is more reluctant to intervene, however, when a forfeiture or right to terminate arises by operation of a statute. In that event, the prevailing view — to which we adhere — is "* * * that where the law prescribes there shall be a forfeiture the court cannot say there shall be none; that the expression of the legislative will [is] most clear and explicit; and [is] not to be defeated upon the ground that the law is harsh and severe in its character." *Rainey* v. *Quigley,* 180 Ore. 554, 559, 178 P.2d 148, 150 (1947).[3]

While §34-18-9 does not provide, as do some repossession statutes, for automatic termination or forfeiture of the lease-hold upon nonpayment of the rent when due, it nonetheless embodies a clear legislative directive that a landlord in plaintiff's position shall have the right to regain possession by legal action whenever his tenant fails to pay his rent within 15 days after its due date. For us to permit defendant under these circumstances to interpose a tender of the rent arrearages as an equitable defense, for the purpose of defeating the right unmistakably conferred upon plaintiff by §34-18-9, would directly contravene the express will of the Legislature. Nothing de-

---

[3]Although she argues that *Caine* v. *Powell,* 185 Ore. 322, 202 P.2d 931 (1949) undercuts *Rainey* v. *Quigley,* 180 Ore. 554, 178 P.2d 148 (1947), defendant ignores the court's statement in *Caine* that it was not departing from the *Rainey* principle as applied to a fact situation like that presented by this appeal. The defendant also relies on *Brownlee* v. *Sussman,* 238 So.2d 317 (Fla.App. 1970). But *Brownlee,* while recognizing that equity may provide relief against a forfeiture provision in a lease when the rent is tendered and when it is otherwise equitable to do so, specifically holds that a like tender is unavailable as an equitable defense under the Delinquent Tenant Act.

fendant has argued persuades us that we can reasonably construe §34-18-9 differently and thereby reconcile her position with what we perceive to be an explicit legislative directive.

The defendant also urges that vital to the determination of whether equity should intervene in these circumstances are the policies underlying the federal funding and operation of the kind of low-income public housing from which she is being evicted. Those policies[4] certainly evidence an objective that every American family shall enjoy "a decent home and a suitable living environment." *Thorpe* v. *Housing Authority*, 393 U. S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474, 483 (1969). While we recognize the validity of that goal, we find nothing in those policies suggesting that its achievement requires us to allow a tender of overdue rent by a delinquent tenant after eviction proceedings have been commenced to abrogate a landlord's statutory right to repossession upon nonpayment of rent.

The defendant's final contention is that the real reason for the housing authority's refusal to accept her rent tender was not her failure to pay the rent when due, but rather the housing authority's mistaken belief that another person was living with her. She argues that an opportunity to assert and prove that allegation before an impartial board, as a defense to the termination of her tenancy, is one of the rights guaranteed all public-housing

---

[4] 42 U.S.C.A., §1401 (1969), governing the funding and operation of public housing authorities provides:

"It is declared to be the policy of the United States to promote the general welfare of the Nation by employing its funds and credit * * * to assist the several States and their political subdivisions * * * and to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income * * * that are injurious to the health, safety, and morals of the citizens of the Nation."

tenants under the Department of Housing and Urban Development Circular RHM 7465.9, issued February 22, 1971,[5] and judicially enforced in *Housing Authority* v. *United States Housing Authority,* 468 F.2d 1 (8th Cir. 1972). Before these proceedings began, however, the defendant received notice in writing from the plaintiff advising her of her right to claim a hearing before a Board of Tenants' Affairs. Had she exercised that right within the time allowed, she would have been entitled to, and undoubtedly would have received, a hearing similar to that guaranteed by Circular RHM 7465.9. Having failed to avail herself of that opportunity, she cannot now complain that she was denied the benefits of such a hearing.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Joseph J. Nicholson,* for plaintiff.

*Peter Thoms,* Rhode Island Legal Services, Inc., for defendant.

---

[5]"Circular 9 basically requires that a tenant be afforded an administrative hearing before an impartial board or official whenever the lease or the local housing authorities' regulations, policies or practices are alleged to be violated; the tenant must be given notice of the rules governing the hearing and is entitled to have counsel present and to present witnesses and to cross-examine; all decisions are to be in writing with a decision adverse to the local housing authority binding (unless arbitrary or capricious) but a decision adverse to the tenant may be judicially appealed by either party." *Housing Authority* v. *United States Housing Authority,* 468 F.2d 1, 4-5 (8th Cir. 1972).