**Thomas D. DAVIS, Petitioner,**

v.

**James H. O'KEEFE, District Court Judge, and the District Court of the Second Judicial District, Respondents.**

Crim. No. 676.

Supreme Court of North Dakota.

July 11, 1979.

---

2. The cost bond was filed nearly six months after the notice of appeal was served and filed.

Vance Gillette, Bismarck, for petitioner.

Arne F. Boyum, Jr., State's Atty., Rolla, for respondents.

Thomas K. Schoppert, Lynaugh, Fitzgerald, Schoppert & Skaggs, Billings, Mont., amicus curiae, on briefs.

PEDERSON, Justice.

Thomas D. Davis, an enrolled member of the Turtle Mountain Band of Chippewa Indians, seeks a writ of prohibition from this court to restrain the district court of Rolette County from prosecuting him for the offense of terrorizing under § 12.1–17–04, NDCC. Davis alleges that his arrest by Rolette County officials within the external boundaries of the Turtle Mountain Reservation was unlawful because they (1) did not comply with the Turtle Mountain Reservation tribal extradition ordinance (§ 1.0710) prior to arresting him and incarcerating him in the Rolette County jail; (2) violated the sovereignty of the Turtle Mountain Chippewa Tribe; and (3) violated several of his constitutional rights. The application for a writ of prohibition is denied.

Neither party furnished sworn affidavits concerning the events surrounding Davis's arrest. From what we can glean from the attorneys' statements in their briefs, oral arguments in this court and from a transcript of an arraignment and plea in the case entitled *State of North Dakota v. Thomas D. Davis,* Rolette County criminal case No. 1761, it appears that Davis was arrested on the Turtle Mountain Indian Reservation without a warrant by a deputy sheriff of Rolette County on October 10, 1978. Apparently, the basis for the arrest is an allegation that Davis had telephoned Kim Albert of Rolla, on the evening of October 9, 1978, and threatened to kill him on the following morning at the First Bank of Rolla. A question that was not argued but which could be important to the issues attempted to be raised is—where was the crime committed? For the purpose of this proceeding, it appears that counsel would permit us to assume that the call was placed from a point off of the reservation. Davis was held at the Belcourt jail within the reservation until he posted a cash bond which had been set by a state judge at Rolla. We have not been told exactly why an extradition hearing was not held.

On December 27, 1978, a preliminary hearing was held by the Rolette County Justice Court, at which time Davis appeared specially and moved for a dismissal, claiming that the arrest violated his constitutional rights when the Rolette County officials failed to comply with the reservation extradition ordinance. This motion was denied

by the county justice court and Davis was bound over to the district court for further proceedings.

Davis then petitioned the district court for a writ of habeas corpus on the same grounds as were considered by the Rolette County Justice Court on the motion to dismiss. The district court denied Davis's petition for the reason that habeas corpus is an inappropriate remedy when the defendant is not imprisoned or restrained of his liberty. Shortly after his petition for writ of habeas corpus was denied, Davis appeared and specially moved for a dismissal of the charge. This motion was denied on the ground that the validity of an arrest does not affect the validity of continued prosecution.

Davis now seeks a writ of prohibition before our court to restrain the district court from exercising jurisdiction in this matter. Although we have been presented with an interesting legal question involving jurisdiction over Indians by the courts of this State, we deem it inappropriate to grant a writ of prohibition. It would be an undesirable precedent for this court to attempt to resolve a question as difficult as state jurisdiction over Indians within Indian lands, without any transcript of factual evidence or sworn affidavits of facts adequate to support any conclusions the court might reach.

As a general rule, tribal governments have always had the authority to control the conduct of their members within the exterior boundaries of a reservation. See *United States v. Quiver*, 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 1196 (1916); *Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res.*, 231 F.2d 89 (8th Cir. 1956).

" 'An Indian tribe may exercise a complete [criminal] jurisdiction over its members and within the limits of the reservation subordinate only to the expressed limitations of federal law.' " *Ortiz-Barraza v. United States*, 512 F.2d 1176, 1179 (9th Cir. 1975). [Bracketed material in original.]

Absent congressional statutes to the contrary, a tribe generally possesses the authority to control entry into its reservation, and to deliver to state authorities tribal members who are suspected of committing a state offense. See *Quechan Tribe of Indians v. Rowe*, 531 F.2d 408, 410 (9th Cir. 1976); *Ortiz-Barraza v. United States, supra.*

We are unaware of any congressional enactment or agreement entered into with the Turtle Mountain Chippewa Tribe which restricts its governmental authority to prescribe procedures for the orderly extradition to state authorities of tribal members suspected of violating state law.

Our court has recognized that the State of North Dakota has not agreed to assume jurisdiction over the Turtle Mountain Indian Reservation. *Rolette County v. Eltobgi*, 221 N.W.2d 645, 647 (N.D.1974). "Only the Congress can take from the Indians their jurisdiction over their own reservation." *Gourneau v. Smith*, 207 N.W.2d 256, 259 (N.D.1973). Although the State could have, pursuant to congressional statute, at one time unilaterally assumed criminal jurisdiction over Indian reservations within the State, it did not elect to do so.[1]

---

1. As a condition of statehood for North Dakota, Congress imposed a "disclaimer provision" prohibiting North Dakota from asserting jurisdiction over the Indian reservations located within this State. Act of February 22, 1889, Ch. 180, § 4, 25 Stat. 676. In 1953, Congress authorized a method by which states could unilaterally assume criminal and civil jurisdiction on Indian reservations. Act of August 15, 1953, Pub.L.No. 83–280, Ch. 505, § 7, 67 Stat. 588. In response to this congressional action, the State of North Dakota, in 1958, amended the second part of § 203 of the North Dakota Constitution as follows:

". . . however, that the Legislative Assembly of the state of North Dakota may, upon such terms and conditions as it shall adopt, provide for the acceptance of such jurisdiction as may be delegated to the state by act of Congress; . . ."

Although our legislature subsequently enacted a method by which the state could assume "civil jurisdiction" over an Indian reservation, it did not provide a method for assuming criminal jurisdiction. See Ch. 27–19, NDCC. See generally, *In re Whiteshield*, 124 N.W.2d 694 (N.D.1963).

The State is precluded from doing so in the absence of complying with established congressional procedures. *Kennerly v. District Court of Montana*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971).

In the context of these federal principles, the sole question here is whether an original writ of prohibition is appropriate under the circumstances. The authority vested in our court to issue original writs is a discretionary power, and an original writ will be granted at the request of a private party only in exceptional cases. *State v. O'Connell*, 151 N.W.2d 758, 761 (N.D.1967). A writ of prohibition is to be used sparingly and only in cases where there is an inadequate remedy by appeal, or in those cases where other equitable principles justify its use. Section 32–35–01, NDCC; *State v. Hanson*, 252 N.W.2d 872, 875 (N.D.1977).

The action against Davis involves a criminal charge. It has not been shown that he will be irreparably injured as a result of the State's continued prosecution or that he cannot ultimately avail himself of the right to appeal in the event he is convicted for the crime of terrorizing. There is no irreparable injury, per se, as a matter of law, when an individual is required to defend himself against a criminal charge.

By refusing to grant the writ of prohibition, our court does not resolve the issue, in any manner, of the lawfulness of the arrest or the lawfulness of the extradition by state officials. The application for a writ of prohibition is denied.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

In 1968 Congress severely limited the unilateral state assumption of jurisdiction on reservations by the passage of the Indian Civil Rights Act, Title IV, Act of April 11, 1968, Pub.L.No. 90–284, § 401, et seq., 82 Stat. 78, 25 U.S.C.A. 1321, et seq. (1979). This statute conditions any assumption of state jurisdiction on the consent of the tribe. To date, neither the Turtle Mountain Tribe nor the State of North Dakota has taken any steps by which the State of North Dakota could assume jurisdiction over the Turtle Mountain Indian Reservation.