Harold SCHNEIDER, Sheriff of Stark County, Petitioner,

v.

Thomas D. EWING, Judge of the Stark County Court with Increased Jurisdiction, Respondent.

Civ. No. 10075.

Supreme Court of North Dakota.

Oct. 6, 1981.

Greenwood, Greenwood & Greenwood, Dickinson, for petitioner; argued by Mark L. Greenwood, Dickinson.

Thomas D. Ewing, respondent pro se.

PAULSON, Justice.

Petitioner, Harold Schneider, Sheriff of Stark County, invoked the original jurisdiction of the North Dakota Supreme Court for an alternative writ of prohibition to stay the proceedings of the *State of North Dakota v. Stark County Prisoners* et al., and *State of North Dakota v. Harold Schneider, Sheriff of Stark County.* We grant the writ.

This petition arises from the following facts:

On several occasions prior to December 3, 1980, respondent, Thomas D. Ewing, Judge of the Stark County Court of Increased Jurisdiction, had spoken with Sheriff Schneider and various members of the Stark County state's attorney's staff concerning the overcrowded conditions of the Stark County jail. The overcrowding also gave rise to problems in segregating pre-trial detainees from post-conviction detainees.

The Stark County jail facility consists of two sections: the "women's side" with two cells, and the "men's side" with seven cells and a day room. Each cell has individual toilet facilities. When the population of the men's side exceeds seven, the occupant of cell one must leave his cell open to access by any inmate who is not assigned a cell.

The State Jail Register shows that the population of the jail varied from a low of six on November 6, 1980, to a high of eighteen on November 21, 1980. Mattresses were laid out on the steel floor of the day room to accommodate those persons not assigned to one of the seven cells.

After Judge Ewing was advised of these conditions, he entered a continuing order, *sua sponte*, in an effort to correct the overcrowding and segregation problems at the jail. The order required the Stark County sheriff to transport sufficient numbers of post-conviction male detainees to the Burleigh County jail to keep the population of the Stark County jail at a maximum of seven.[1] The original order was captioned with the State of North Dakota as plaintiff and Stark County Prisoners, et al., as defendants. This order was not made in open court or upon the record in any action.

On July 23, 1981, Judge Ewing was informed that the sheriff was not complying with the continuing order of December 3, 1980. The State Jail Register indicated jail populations as high as sixteen inmates as late as April 26, 1981. Judge Ewing therefore issued, *sua sponte*, an order to show cause dated July 27, 1981, directing Sheriff Schneider to appear before him on August 4, 1981, to show cause why he should not be held in contempt. This order was captioned

---

1. Burleigh and Stark Counties already had a contract in effect whereby Stark County could transport prisoners to Burleigh County jail if necessary.

with the State of North Dakota as plaintiff and Harold Schneider, Sheriff of Stark County, as defendant. Subsequently, the date for the hearing was changed to August 10, 1981, and was further continued to September 14, 1981, after Sheriff Schneider entered his response to the order to show cause, which alleged that the Stark County Court of Increased Jurisdiction had no jurisdiction over the parties or the subject matter because the order was not served by a disinterested party.

On September 4, 1981, Sheriff Schneider filed an application with the North Dakota Supreme Court requesting that a writ of prohibition be issued against Judge Ewing restraining him from further proceedings in this matter. The North Dakota Supreme Court, on September 4, 1981, issued its order to Judge Ewing to refrain from further proceedings in this matter until further order by the Supreme Court of North Dakota. This court further ordered Judge Ewing to appear before it on September 10, 1981, to show cause why it should not issue a writ permanently enjoining proceedings in this matter.

The issues for consideration by the court are as follows:

1. Whether the Stark County Court of Increased Jurisdiction has jurisdiction over the subject matter.
2. Whether the Stark County Court of Increased Jurisdiction has jurisdiction over the petitioner, Sheriff Schneider.
3. Should a writ of prohibition be issued by this court:

▮ We first discuss the issue of whether or not the Stark County Court of Increased Jurisdiction had jurisdiction over the subject matter of this action.

Although Judge Ewing's intentions were commendable, his actions were procedurally misdirected from the outset. He initiated both the continuing order of December 3, 1980, and the order to show cause of July 27, 1981, *sua sponte*, in the name of the

State of North Dakota. The continuing order named as defendants Stark County Prisoners, et al., and the order to show cause named as defendant Harold Schneider, Sheriff of Stark County. Neither the Stark County state's attorney nor the attorney general nor his assistants have instituted an action against Sheriff Schneider nor against the general category—Stark County Prisoners, et al.

In *State v. Stepp*, 45 N.D. 516, 178 N.W. 951 (1920), the Supreme Court stated that the attorney general, his assistants, and the state's attorneys are the only public prosecutors in all cases where the State is a party to the action.

At oral argument, Judge Ewing stated that he discussed the problem with the state's attorney for Stark County, as well as with the Stark County board of county commissioners. The board of county commissioners was apparently unresponsive and the state's attorney took no action in this matter for reasons of an apparent conflict of interest.[2]

Assuming that the state's attorney would have been able to initiate an appropriate action in this matter, Judge Ewing should have brought the matter to the attention of the district court for action, pursuant to § 11–16–06, N.D.C.C., which allows the district court to request the attorney general or an assistant attorney general to take charge or to appoint an attorney to take charge when the state's attorney refuses or is unable to take action. Judge Ewing stated at oral argument, however, that he did not seek help from the district court or from the attorney general, but, rather, initiated these actions *sua sponte.*

Therefore, the continuing order and the order to show cause were not initiated by the proper public prosecutors. As a result, those actions were not properly before the court.

---

2. The state's attorney wrote to the attorney general requesting intervention because he was concerned about the necessity of maintaining a close working relationship with both sides and also because of a possibility of being called as a witness. The attorney general's response to this request, however, is unknown to either of the parties to this action and this court.

We conclude that no legal actions have been properly brought by the State of North Dakota against the Stark County prisoners or the sheriff of Stark County. There being no legal actions in existence, the Stark County Court of Increased Jurisdiction has no jurisdiction over the subject matter nor of the person of the petitioner.

The continuing order of December 3, 1980, cannot be said to be issued pursuant to any particular legal action involving defendants who were arrested pursuant to a warrant signed by Judge Ewing, or who were tried before him or otherwise detained by him. The continuing order was a blanket order covering all of the Stark County prisoners with no attempt to distinguish whether they were detained pursuant to legal actions in Judge Ewing's court, or in any other court. What authority Judge Ewing had over particular detainees in the Stark County jail was clearly exceeded by the blanket order. The blanket order is, in effect, an attempt to effectuate jail reform through a *sua sponte* court order.

In his oral argument, Judge Ewing focused basically on Rule 46(i) of the North Dakota Rules of Criminal Procedure as the basis for his jurisdiction. The Rule states:

"*(i) Supervision of detention pending trial.* The court ordering defendants or witnesses detained shall exercise supervision over the detention of those defendants and witnesses pending trial, for the purpose of eliminating all unnecessary detention."

The Explanatory Note to Rule 46(i), N.D.R. Crim.P., governing Release from Custody, states in the Criminal Rules Manual that:

"Subdivision (i) provides that where the court is unable to release a defendant or witness under any of the provisions of this Rule, it shall be responsible to insure a swift disposition of the case with a minimum of preconviction detention."

This Rule gives the court the specific responsibility of a swift disposition of the action against the defendant.

We will not, however, extend the Rule beyond its intended scope. The blanket order issued by Judge Ewing included detainees who were not under his supervision, pursuant to Rule 46(i), N.D.R.Crim.P. To permit such an extension of the Rule would merely serve to insert judicial interference into the administration of jails without regard to our statutory scheme for jail administration and supervision provided by Chapter 12–44.1, N.D.C.C.

Chapter 12–44, N.D.C.C., was repealed by S.L.1979, Chapter 172, § 29 effective July 1, 1980, and was replaced by Chapter 12–44.1, N.D.C.C. Under Chapter 12–44 the judges of the district courts were to prescribe rules for jails. This rule-making authority, however, is now the responsibility of the attorney general under § 12–44.1–24, N.D.C.C. The apparent intent behind this change is to allow district court judges to act as courts and not as legislative or administrative bodies when they hear cases involving jail problems.

Section 12–44.1–13, N.D.C.C., provides that inmates are to be supervised by trained jail staffs. Inmates' rights are to be ensured by the governing body of each jail, § 12–44.1–14, N.D.C.C., in this case the Stark County board of county commissioners. Of particular importance in the present case is § 12–44.1–14(1) and (2), N.D.C.C., which provide that the attorney general is responsible for prescribing rules and regulations for construction, maintenance, and operation of jails, as well as for the care and treatment of inmates. He is also responsible for appointing a jail inspector who is to inspect each jail at least once a year to determine if the rules and regulations have been complied with. § 12–44.1–24(4), N.D.C.C. The jail inspector is required by § 12–44.1–25, N.D.C.C., to make written annual reports to be submitted to the attorney general and the governing body of the jail. The report is to specify deficiencies or noncompliance with minimum standards and to set time limits within which they are to be remedied.

Corrective action or enforcement of the inspection report is provided for in § 12–44.-1–27, N.D.C.C. Subsection 2 of that section is the portion applicable to the facts of this case, and states that if the governing body

of a jail fails to take corrective action, the attorney general is authorized to petition the district court of the judicial district within which the jail is located to order the initiation of corrective action or the closure of the facility.

When Judge Ewing realized that the conditions in the Stark County jail were in need of improvement, he had the following courses of action to pursue.

The first option Judge Ewing could have exercised would have been a conference with the state's attorney, the board of county commissioners, and the sheriff, in order to work out a solution. A part of the solution could have been to take further advantage of the contract between Stark County and Burleigh County which allows Stark County to use the jail facilities in Burleigh County when necessary. The record and oral arguments indicate that there were some informal discussions to this effect, but not of a nature indicating a firm resolve by all of the parties to seriously address the problem with the intent to finally solve it.

A second course of action would have been for Judge Ewing to have made a written request to the attorney general to exercise his rulemaking authority or to cause an inspection to have been made, pursuant to § 12–44.1–24 and § 12–44.1–25, N.D.C.C., respectively. If the attorney general were to refuse to act on this matter, an *ex relatione* action brought by the judge on behalf of the people of the State would be appropriate. See *State ex rel. Agnew v. Schneider*, 253 N.W.2d 184 (N.D.1977).

A less desirable alternative would be to seek the advice of the state's attorney to explore the possibility of an appropriate action brought by the state's attorney against the sheriff as chief administrator of the jail or against the board of county commissioners as the jail's governing body. If the state's attorney were to refuse to perform or was unable to do so, resort could be had to the district court by way of § 11–16–06, N.D.C.C., to seek intervention by the attorney general or an appointed attorney.

As we have already stated, Judge Ewing's intentions and concern for the detainees in the Stark County jail are certainly laudable. Nevertheless, our statutes provide for a system of jail supervision and administration which requires changes and reforms to be the responsibility of the attorney general with enforcement through the district courts. The Code seeks a more uniform statewide system of jail administration by the rules being promulgated from one central office, that of the attorney general. To allow the courts to insert their judgment into the operation and administration of jails would be, in effect, to revert back to the old system of jail supervision by the district courts under Chapter 12–44, N.D.C.C., which chapter was replaced by Chapter 12–44.1, N.D.C.C. The apparent intent of the change was to remove the judiciary from responsibility for jail rulemaking and supervision.

The next issue for our determination is whether or not we should issue a writ of prohibition. Article VI, § 2 of the North Dakota Constitution, states, in part, that the supreme court

"shall have appellate jurisdiction, and shall also have original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction."

Section 28–31–07, N.D.C.C., provides to the North Dakota Supreme Court original jurisdiction to direct an alternative writ to be issued by the clerk.

Chapter 32–35, N.D.C.C., governs the application for and issuance of writs of prohibitions. The writ is defined in § 32–35–01, N.D.C.C., in part, as:

"the counterpart of the writ of mandamus. It arrests the proceedings of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person".

The writ of prohibition is not a writ of right, but is available only when an inferior court, body, or tribunal is about to act with-

out or in excess of jurisdiction. *Sunbehm Gas, Inc. v. Lesmeister*, 308 N.W.2d 555, 558 (N.D.1981).

In *Davis v. O'Keefe*, 283 N.W.2d 73, 76 (N.D.1979), in denying a writ of prohibition, this court stated:

"The authority vested in our court to issue original writs is a discretionary power, and an original writ will be granted at the request of a private party only in exceptional cases. *State v. O'Connell*, 151 N.W.2d 758, 761 (N.D.1967). A writ of prohibition is to be used sparingly and only in cases where there is an inadequate remedy by appeal, or in those cases where other equitable principles justify its use. Section 32–35–01, NDCC; *State v. Hanson*, 252 N.W.2d 872, 875 (N.D. 1977)."

The *Davis v. O'Keefe case, supra*, involved an Indian who sought a writ of prohibition to restrain the district court from prosecuting him for a criminal offense, alleging that his arrest within the external boundaries of a reservation was unlawful because county officials did not comply with a tribal extradition ordinance. This court held that prohibition was not appropriate because the defendant had not shown that he would be irreparably injured as a result of continued prosecution or that he could not ultimately avail himself of the right to appeal in the event of a conviction.

The present case, however, is distinguishable from *Davis v. O'Keefe, supra*. The primary difference in the present case is that Judge Ewing initiated these proceedings, *sua sponte*, albeit in the name of the State of North Dakota. He has particular knowledge of the facts and personal involvement in the proceedings. The judge's interest in this cause indicates that Sheriff Schneider would not be provided with an appropriately objective determination of contempt. The defendant in *Davis v. O'Keefe, supra*, on the other hand, faced his charges in a disinterested forum with the possibility of an acquittal based on the facts. We believe that the differences between this case and *Davis v. O'Keefe, supra*, make it appropriate for us to grant a writ of prohibition rather than to require an appeal.

In the instant case, Sheriff Schneider is the subject of an order to show cause why he should not be held in contempt for his failure to comply with Judge Ewing's continuing order dated December 3, 1980, which we have decided was void *ab initio*. The sheriff made no attempt to appeal the continuing order but seeks a writ of prohibition to enjoin the contempt proceeding, in Judge Ewing's court, which was initiated to enforce the continuing order. Because the Stark County Court of Increased Jurisdiction was without jurisdiction to issue the continuing order as well as the order to show cause, and because of Judge Ewing's involvement and interest in the proceedings, our grant of a writ of prohibition is appropriate. We will not require Sheriff Schneider to be subjected to a contempt hearing for failure to comply with a void continuing order and require him to subsequently appeal the order and probable contempt determination.

For reasons stated in this opinion, the writ of prohibition is granted. Because the matter under consideration is one of great public concern, no costs are assessed against either party. The clerk of this court is requested to serve a copy of this opinion upon the Attorney General of this State at the earliest opportunity.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I agree with the opinion written for the court by Justice Paulson. I write this special concurrence merely to note that it is unfortunate that this matter arose only after issuance of the order requiring Sheriff Schneider to show cause why he should not be held in contempt. The same issues that were presented to this court by Sheriff Schneider in the application for a writ of prohibition were present at the time Judge Ewing issued his continuing order, *sua sponte*, on December 3, 1980. I believe that

was the most appropriate time to raise the issues.

As Justice Paulson notes, the sheriff made no attempt to appeal the continuing order. Had some action to contest the validity of the order been taken at that time, the options discussed in the majority opinion might have been instituted more rapidly and the apparently serious condition which exists in the Stark County jail might be more readily rectified. It is not wise to simply ignore an order of the court which the parties believe to be invalid, but it does not appear that the situation which exists in the Stark County jail will be corrected by legal action among the parties. Rather, it would seem that the cooperation of those persons concerned with the conditions existing at the jail is essential to rectify those conditions.