Estabrook v. Hughes.

E. ESTABROOK, APPELLANT, v. MARTIN HUGHES ET AL.,
APPELLEES.

1. **Forfeiture:** FIXTURES. Where a tenant was in possession under a lease which contained a clause in these words, "the said Julien G. B. Handbine is to have the privilege of removing at the end of said term all improvements placed by him on the said premises, only on condition however that the conditions of this lease are fully complied with," and allowed one quarter's rent, which by the terms of said lease was required to be paid quarterly in advance, to be in arrears for thirteen days when the same was tendered and refused—*Held*, That equity would not enforce a forfeiture of the right to remove such improvements.

2. **Pleading:** DEMURRER. *Semble*, that when a party, after an adverse ruling upon his demurrer to a pleading, elects to stand upon it, and brings the same to the supreme court for review, he will be permanently concluded thereby. The cause will not be remanded to the district court with leave to answer to the merits.

THIS was an appeal by plaintiff from a judgment rendered against him in the Douglas county district court. The cause was heard below upon plaintiff's demurrer to the answer of the defendant Hughes, which was overruled and cause dismissed.

*E. Estabrook,* and *Estabrook & Hall,* for plaintiff.

As there is nothing in the issue relating to estoppel, the court cannot consider it. *Estabrook v. Omaha Hotel Co.*, 5 Neb., 76. *Fryes, ex rel., v. The Lexington & Big Sandy R. R. Co.*, 2 Met. (Ky.), 823–4.

If considered by the court we say an estoppel must be certain, precise, and clear. *Lajoye v. Primm*, 3 Mo., 529. *Rich v. Hotchkiss*, 16 Conn., 409. Must be mutual—both parties must be bound or neither estopped. 3 Grant (Pa.) Cases, 177. 16 Cal., 100. 14 Ib., 279–367. 17 Ib., 401. 1 Johns., 382. Must be acts or

declarations of a person by which he designs to induce another to alter his previous position. 5 Abbott's U. S. Dig., § 713, and authorities cited. See especially Ib., § 733. 32 Vt., 97: Bind only parties and privies. 5 U. S. Dig., 409, and authorities cited. Cannot be taken by inference—must be relied on in pleadings. 5 U. S. (Abbott), § 27-37. A stranger cannot take advantage of a statement made to others. Ib., § 604. Ib., § 711–726 et seq. 18 N. Y., 457. 4 Barb., 100. 13 Ib., 137. 2 Grant (Pa.) Cases, 413. 27 Texas, 407. 24 Vt., 143. Nearly all the late decisions on this subject are collated in 5 U. S. Dig. (Abbot's), 409 et seq., to which the attention of the court is respectfully invited.

*Stull & Burnham*, for appellee.

We believe that the plaintiff is estopped from setting up title to said buildings, or any interest therein, for the following reasons, to-wit.:

1. By the renewal of the lease given in 1869, on October 4, 1871, recognizing up to that time a compliance with all requisitions.

2. That before the purchase and assignment by and to DePuy, he (Estabrook) admitted and stated, in presence of DePuy, that which misled Depuy to purchase the premises and take possession under said lease.

3. That at the time of the acknowledgment of said bill of sale to DePuy, he failed to make known any claim or interest owned by him in the same. 5 Iowa, 415.

4. During the whole of said tenancy by Handbine, DePuy, and Hughes, he (Estabrook) never claimed or pretended to claim any right or rental interest in the value of the buildings in controversy, but only claimed and received rent for the land.

34

5.   That the plaintiff has never asserted any right to enter and assert any right to the said premises, and that he has never by positive act, or otherwise, made known the claim which he now asserts, but has stood by for a period of eight years and more, without in anywise disputing the claim of said tenants to the buildings in controversy, and which at all times have been in their possession and under their control.

6.   That in his receipt for rent he has stated that the tenancy of defendant Hughes was under Haudbine's lease.   In view of these facts, before set out, as to plaintiff's conduct, acts, and admissions, the doctrine of estoppel supports our position, when we say that plaintiff cannot now assert a claim or interest in the buildings in controversy adverse to the interest claimed by defendant Hughes.   We cite the following authorities in support of the above:   *Dezell v. Odell*, 3 Hill, 215.   *Willard Canal Co. v. Hathaway*, 8 Wend., 483.   *Gray v. Allen*, 14 Ohio, 58.   *Elwood v. Haztell*, 38 Penn. State, 33.   *Armstrong v. Pierson*, 5 Iowa, 325.

COBB, J.

The case as made by the answer as amended, and which, for the purposes of this opinion, are admitted to be true by the demurrer, may be stated in a few words.

On the nineteenth day of October, 1871, the plaintiff was the owner of a certain lot in Omaha.   One Haudbine and wife owned certain buildings situated on said lot.   On that day a lease was executed between the plaintiff and the said Haudbine, whereby the plaintiff leased to Haudbine the said lot by metes and bounds, for the term of three years from the first day of January then next ensuing, at a certain rent therein speci-

fied, to be paid quarterly in advance, and containing the provision that "the said Julian G. B. Haudbine is to have the privilege of removing, at the end of said term, all improvements placed by him on said premises only on condition that the conditions of this lease are fully complied with." The amendment to the answer contains an averment that the improvements meant and intended in the above clause were the buildings then erected on the said lot, and owned by the said Haudbine.

On the twentieth of September, 1872, Desire Haudbine, wife of the said lessee, with the knowledge and consent and acquiescence of the plaintiff, sold and conveyed the said buildings to one Depuy, and on the twenty-ninth day of September, 1873, the said Depuy, with the knowledge and consent of plaintiff, sold and conveyed the said buildings, and assigned the said lease to the defendant Hughes.

It seems that after the defendant Hughes became the occupant of said premises, he did not usually, if ever, pay the rent with punctuality, but that the same was always afterwards received by said plaintiff, and all want of punctuality in that respect was from time to time waived by the said plaintiff; that said rent was paid in full up to the fourth day of July, 1876, when, on the twelfth day of that month, the plaintiff notified the defendant Hughes to quit the said premises; that four days thereafter the defendant tendered to the plaintiff one month's rent, which was refused; that within five days thereafter defendant tendered to the plaintiff $28.50, three months' rent in advance, from the said fourth day of July, 1876, which was also refused; that one object for offering such payments on the part of the said defendant was to retain possession of the premises until he could remove the buildings therefrom, and the chief object of this

action was to enjoin the defendant from removing said buildings.

After examining all of the authorities cited by plaintiff I think that he is estopped to deny the right of defendant Hughes to remove the buildings, upon the facts admitted by the demurrer. In coming to this conclusion, I do not find it necessary to deny the position taken by the plaintiff, to the effect that where a tenant, having the right to remove fixtures erected by him on the demised premises, accepts a new lease of such premises without reservation or mention of any claim to such fixtures, and enters upon a new term thereunder, the right of removal is lost, notwithstanding his actual possession has been continuous. In the case at bar I think there was but one term. The time which Hughes occupied the premises, after the expiration of the term of three years from the fourth of January, 1872, was a tenancy from quarter to quarter—not properly speaking a term, and such holding will be presumed to be under and subject to the terms of the previous lease. See Ewell on Fixtures, 177, and notes.

Up to the fourth of January, 1875, the holder of the Haudbine lease had, according to its terms, the right to remove the buildings on condition that such holder complied with the terms of the lease, and it is alleged in the answer that he did so comply with such terms, under the tenancy from year to year, or from quarter to quarter, after the termination of the three years term up to the fourth day of July, 1876, to which time he alleges in his answer that the rent was duly paid. It is true, that under the terms of the lease, a payment of $28.50 for one quarter's rent in advance became due on the fourth day of July, 1876, which was not paid or tendered until after the service of the notice to quit. But this rent was tendered to the plaintiff

almost immediately upon receiving the notice to quit, by the defendant.

The law does not favor forfeitures as between landlord and tenant even of the term, and I think they should be less favored where the subject of the forfeiture is valuable property owned by the tenant. "Where a tenant has forfeited his lease, by a breach of the covenant for the payment of the rent, courts both of law and equity consider the clause of re-entry (or forfeiture) to be mainly inserted for the landlord's security, and will interfere in the tenant's behalf, although all the formalities of a common law demand may have been complied with, upon his satisfying the rent due, and making compensation for any damages which the landlord may have sustained in consequence of this omission. And in general a court of equity will relieve the tenant from a forfeiture when the breach has been accidental, or when it has been incurred by neglecting to pay a sum of money, the interest upon which may be calculated with certainty, and the landlord thereby compensated for the inconvenience he may have sustained by the tenant's withholding payment." See Taylor's Landlord and Tenant, sec. 495, and authorities there cited. And again: "But courts of equity are only closed against a tenant where the forfeiture is incurred by his willful and culpable neglect to fulfill the terms of his covenant, and not in cases where the omission has been occasioned by inevitable accident. And the general rule to be applied to all such cases seems to be that courts of equity will relieve where the omission and consequent forfeiture are the result of mistake or accident, and the injury and inconvenience arising from it is capable of compensation." Ibid, sec. 496.

The pleadings in this case show no damages or inconvenience to the plaintiff other than the withholding

of one quarter's rent for a period of less than half a month. It is scarcely necessary to say that, unless compelled by an unbending rule of law, a court of equity would not enforce the forfeiture of property of considerable value under such circumstances. Therefore, viewing the law applicable to the case, as I do, it follows that the judgment of the district court overruling the demurrer is correct and ought to be affirmed.

After the decision in this case was announced the plaintiff requested the court to remand the case to the district court with leave to him to answer to the merits. Such course would be contrary to the established practice of this court. The general rule is, that when a party, after an adverse ruling upon his demurrer to a pleading, elects to stand upon it, and brings the case to this court for review, he will be permanently concluded thereby.

JUDGMENT AFFIRMED.