GEORGE G. FARMER, APPELLEE, V. JOHN H. PITTS,
APPELLANT.

FILED MARCH 1, 1922.    No. 21795.

1. **Landlord and Tenant:** FORCIBLE ENTRY AND DETAINER: DE-
   FENSE. In a case brought under the statute for forcible entry
   and detainer to obtain possession of real estate by reason of a
   tentative failing, or neglecting or refusing to pay rent when
   due, it is a sufficient defense if it appears that no demand was
   made for the rental, and that the defendant, in good faith,
   mailed the rental to the landlord on the day it became due.

2. ———: RENT: DEMAND. The tenant is entitled to a demand
   for and to a reasonable opportunity to pay the rental, and
   there must be a neglect or refusal to pay on his part before
   a forfeiture of the lease can be claimed and the landlord entitled
   to a judgment of ouster.

3. ———: ———: FORFEITURE. The provision of the statute and
   the general stipulations for forfeiture in the lease are consid-
   ered in equity as securing the rent, and not for forfeiting the
   lease, when the tenant acts in good faith and pays promptly
   on demand.

4. ———: ———: ———: EQUITY. The defense in forcible
   entry and detainer actions may be equitable as well as legal
   under the Nebraska Civil Code, and the tenant will be relieved
   from a technical forfeiture when absolute good faith is shown
   and the circumstances are such as to call for the exercise of
   equitable principles in his behalf to prevent gross injustice.

APPEAL from the district court for Lancaster county:
FREDERICK E. SHEPHERD, JUDGE. *Reversed.*

*George W. Ayres* and *Peterson & Devoe,* for appellant.

*John J. Ledwith, contra.*

Heard before MORRISSEY, C.J., ROSE, ALDRICH and
FLANSBURG, JJ., BUTTON and COLBY, District Judges.

COLBY, District Judge.

This is an action of forcible and unlawful detainer
originally brought before a justice of the peace under
sections 8466-8482, Rev. St. 1913, to obtain possession of

real estate by reason of nonpayment of rent at the time it became due. A judgment was rendered in justice court in favor of defendant, and the case was appealed by plaintiff to the district court for Lancaster county, where a jury was waived and the case tried to the court. The district court found in favor of plaintiff, and rendered judgment for the possession of the premises and ouster against the defendant, who brings his case by appeal to this court.

The plaintiff, appellee, was, at the time of the commencement of the action, the owner of the brick block, sought to be recovered, situated in south Lincoln and used for business purposes. The defendant, appellant, was one of his tenants. The lease involved in this case was made by Louis R. Wood, the grantor of the premises to appellee, George G. Farmer, to the appellant, John H. Pitts, and provided for the payment of monthly rentals in advance on the first day of each month at the office of A. P. Peterson, agent of the original lessor. It appears that the lessee attorned to the appellee after his purchase of the premises, and that the place of payment of rent was changed to 140 North Eleventh street, Lincoln, Nebraska. It further appears from the record that the lessee was in the habit and customarily paid the rent by mailing the appellee a check therefor at or about the time the rent became due; that this continued until November 1, 1919, when the appellee again changed his residence and address and notified appellant, in writing, that in the future the place of payment of the rents for the leased premises would be at 130 North Twenty-seventh street, Lincoln, Nebraska, instead of 140 North Eleventh street, where it had been payable for some time after the purchase of the property by appellee.

On the 1st day of April, 1920, the record shows, and it is agreed by stipulation between the parties, that the appellant, Pitts, mailed to the appellee his check for $40, inclosed in an envelope with a dollar bill, in payment

Farmer v. Pitts.

of the rent for the ensuing month, but that envelope and contents did not reach appellee until the 3d of April, 1920, at 12:35 p. m., and was thereupon refused by appellee. At 9 o'clock a. m., on April 3, 1920, several hours before the rent check envelope was brought to appellee, he served personally on appellant a written three days' notice to vacate said premises.

The lease contained the provision that, if any rent shall be due and unpaid, it shall then be lawful "for any of said party of the first part to reenter said premises, and party of the second part agrees to vacate said premises without notice." It is the contention of appellant that (1) he did not fail, neglect or refuse to pay the rent when the same became due, and that the mailing of the check on the 1st of April was a compliance with the terms of the lease under the custom established between the parties; and (2) that, even if there was a technical default, a forfeiture of the lease as tenant should not be enforced, since, prior to the commencement of the action, he tendered the full amount of rent due.

The propositions or contentions of appellant, Pitts, will be considered in their order.

1. Did appellant fail, neglect or refuse to pay the rent when due? It is the conclusion of the writer of this opinion, from a consideration of the stipulated facts and other evidence shown by the record, that there was no refusal, failure or neglect on the part of appellant to pay the rent when due. The appellant, according to the established custom between the parties, sent the amount of rental due on April 1 by mail to the appellee on the date the same became due, and there seems to have been no intention, as shown by the record, on the part of appellant to evade or avoid in any way the prompt payment of such rental. It is apparent from the record that appellee, Farmer, acquiesced in the payment of the rent by check and its remittance by mail, and the rule of law is well established that

"remittance by mail may constitute payment if expressly or impliedly authorized by the creditor or such payment is according to the usual course of dealing between the parties." 30 Cyc. 1186. See *Buell v. Chapin*, 99 Mass. 594.

No demand whatever was made on lessee for payment of the rent excepting that contained in the lease, and the landlord, of his own volition and without the consent of the lessee, had moved or changed the place of such payment a mile or two farther away than that provided in the lease or the place of payment agreed upon after the purchase of the property. The lessee could not be legally required to travel all that additional distance to the new place of payment and personally pay or tender to the lessor a check or the money for such rent. Suppose the lessor, instead of going a mile or two away, had gone 10 miles, or 500 miles, certainly the lessee, neither in law nor in reason, would be obliged to travel that distance to make the payments on the exact date stipulated, or be obliged to mail the envelope containing the check days, weeks, or perhaps months, in advance in order for it to reach the lessor at the time the rent became due. The ordinary principles of reason, common sense and justice should govern in questions of this kind. The lessee, in law, had a right to assume that the post office department would do its duty and deliver the envelope containing the rent in due time, and that the lessor would, in justice, accept such rent; and if for any reason it was not received or delivered the lessee should, as a matter of ordinary fairness and justice, be advised of such fact and have a chance to remedy the same. The writer of this opinion cannot but be impressed with the idea, which seems to come from a reading of the record, that it was not the rent the lessor wanted, but rather a forfeiture of the lease contract. Now, the provision of the statute regarding a forcible entry and detention, as well as the provision in the lease as to the nonpayment of the rent, is for the security of such rental

to the lessor, not for the purpose of giving him an undue advantage and permitting him unjustly to obtain a forfeiture of the lease.

2. As to the second proposition or contention of appellant, even if there was a technical default or failure to pay the rent on the day it became due, a forfeiture of the lessee's rights as tenant should not be enforced under the facts in this case. The default, if any, in making payment on time was inconsequential, and the record shows that payment was tendered or made in the usual way by mail on the day it became due, or at least prior to the commencement of the action. According to the established rules of equity and justice this is sufficient.

In a note in 24 Cyc. 1365, it is said: "Where by accident or mistake the covenant in a lease is broken, and the lessors have not been in fact injured and can be put *in statu quo,* equity will relieve against a forfeiture. See *Mactier v. Osborn,* 146 Mass. 399.

And in *Giles v. Austin,* 62 N. Y. 486, the court say: "A covenant in a lease by the tenants to pay taxes and assessments is in the nature of a covenant to pay money, and a forfeiture incurred by a breach thereof may be relieved against on the same principles. In the absence of bad faith on the part of the tenant, and where the position of the parties has not been changed and no new rights have intervened, mere delay on the part of the tenant in making the stipulated payments will not bar him from relief."

In 1 Pomeroy, Equity Jurisprudence (4th ed.) sec. 453, it is said: "Where a lease contains a condition that the lessor may reenter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forefeiture are

intended merely as a security for the payment of money."
See *Sunday Lake Mining Co. v. Wakefield*, 72 Wis. 204.

"Under a lease authorizing the lessor, in case of fail-
ure of the tenant to pay an instalment of rent when due,
to consider the lease forfeited, forfeiture may not be
enforced and an action of forcible entry and detainer
be maintained without a demand for and a reasonable
opportunity to make payment." *Cole v. Johnson*, 94
N. W. 1113 (120 Ia. 667).

"Where, in a lease, it was stipulated that if the lessees
failed to pay, first, rent at a certain time, or second,
taxes, etc., or to refund those paid by lessor, the lease
should be forfeited. * * * Where such lessors were
accustomed to collect rent themselves, and the rent was
due July 1st, and where the lessors were not in the
state until the 5th, when the rent was tendered; held, that
a sufficient and substantial compliance with the terms
of the lease was shown." *Burnes v. McCubbin*, 3 Kan.
221. See *Wilson v. Jones & Tapp*, 1 *Bush* (Ky.) 173.

The adjudicated cases of the supreme court of this
state are in accord with the doctrines announced in the
other states. In the case of *Haynes v. Union Investment
Co.*, 35 Neb. 766, Judge Maxwell, who wrote the opinion,
says: "Under the decisions of this court a demand may
be made by a notice to quit. *Hendrickson v. Beeson*, 21
Neb. 61. If this is a sufficient demand it is probable
that a tender of payment at that time would defeat
a recovery." Paragraph 2 of the syllabus reads:

"In order to work a forfeiture of a lease for non-
payment of rent there must be a demand on the tenant
for the rent, although such demand may be in the form
of a notice to quit."

The case of *Haynes v. Union Investment Co., supra,*
is cited by the supreme court of South Dakota, in which
that court lays down the general rule as follows: "Pay-
ment or tender of the rent by the lessee within three days
after the notice to quit, given under Comp. Laws, sec.
6073, for nonpayment, is served, prevents a forfeiture."

*Dakota Hot Springs Co. v. Young,* 9 S. Dak. 577.

Where there is no attempt at evasion or fraud in the payment of rent, but on the contrary an honest endeavor and intention to comply with the terms of the lease, as shown by the record in this case, a forfeiture should not be given.

In the case of *Springfield F. & M. Ins. Co. v. McLimans & Coyle,* 28 Neb. 846, this court said: "Forfeitures are not favored and should not be enforced unless the courts are compelled to do so." And in the case of *Hanover Fire Ins. Co. v. Gustin,* 40 Neb. 828, this court reiterates this doctrine: "Forfeitures are odious in law and should never be enforced unless the court is compelled to do so."

In the opinion written in the case of *Estabrook v. Hughes,* 8 Neb. 496, it is said: "Where a tenant has forfeited his lease, by a breach of the covenant for the payment of the rent, courts both of law and equity consider the clause of reentry (or forfeiture) to be mainly inserted for the landlord's security, and will interfere in the tenant's behalf, although all the formalities of a common-law demand may have been complied with, upon his satisfying the rent due, and making compensation for any damages which the landlord may have sustained in consequence of this omission."

In *Ostenberg v. Scottsbluff Investment Co.,* 106 Neb. 143, this court announces the general doctrine: "Equityt has power to relieve against a forfeiture of a lease for the nonpayment of rent on the day stipulated, and such power should be exercised when the circumstances are such as to call for the exercise of equitable principles, and where, if withheld, gross injustice will follow, when the failure to pay the rent was not wilful or such culpable neglect as to amount to the same thing."

In the instant case everything in the record shows the good faith of the lessee and his intention to pay the rent promptly at the time the same became due and in the customary manner agreed upon between the parties. As this court has held, equity considers the

general stipulations for entry by the landlord on the nonpayment of rent as intended for securing the rent, and not for forfeiting the lease, if the tenant shall have acted in good faith and shall promptly pay the rent when demanded or before the landlord suffers loss or inconvenience from the delinquency. Such provisions of the law and of leases regarding forfeitures for nonpayment of rent are not for the purpose of enabling the landlord to obtain undue advantage of a tenant by a forfeiture of the lease on technical and inequitable grounds.

Under the plea of not guilty or under an answer of general denial in cases of forcible entry and detention brought by a landlord against a tenant, the tenant is entitled to all the defenses, whether of law or equity, which are warranted by the evidence, and in this case it appears that the facts, the law and the equities are all on the side of the tenant.

The judgment of the district court is reversed and this cause is remanded for further proceedings.

REVERSED.

FLANSBURG, J., dissenting.

I am unable to concur in that portion of the opinion, and the rule stated in the syllabus, that a tenant is entitled to a demand for and a reasonable opportunity to pay the rental before a landlord can claim a forfeiture. Our statute was intended, I believe, to put an end to that common-law rule. Where a tenant fails, refuses or neglects to pay his rent when due, he is from that moment a tenant holding over his term, and the landlord's right to eject the tenant has then become complete. Unless by some action on his part the landlord affirmatively waives the forfeiture, he need only serve the statutory notice to vacate and bring an action in forcible entry.

I agree with the rule, as stated in the opinion, that equity may relieve against the forfeiture, and that it is proper that it should do so, when it appears that the rent has been forwarded in conformity with a custom

established by the parties, but I do not agree that before the landlord can establish the legal right to a forfeiture he must make some sort of demand on the tenant for the rent; nor do I believe that the facts in this case show that, by an established custom, the landlord was to receive delayed payments. *O'Connor v. Timmermann,* 85 Neb. 422.