PAULINE KLEVEN, APPELLANT, V. MILLY BRUNNER, APPELLEE.

429 N.W.2d 384

Filed September 23, 1988.   No. 87-160.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellant.

No appearance for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

This is an appeal from an order of the district court which denied and dismissed plaintiff's action for forcible entry and detainer. Assigned as errors are the finding that defendant had a valid lease on the premises, the finding that plaintiff had waived her right to receive certain rental payments, and the dismissal of plaintiff's petition on both causes of action.

On July 25, 1980, the plaintiff, Pauline Kleven, sold by contract of sale a commercial property located in Scottsbluff to Economy Furniture, Inc. (Economy). On May 20, 1983, Economy executed a lease agreement with the defendant, Milly Brunner, for a term of 48 months from June 20, 1983, at a monthly rental of $375. This lease provided that rent payments were to be made at the office of Economy. Thereafter, Economy defaulted on its purchase contract with Kleven, which was then foreclosed. On May 9, 1986, the district court entered its decree; a sheriff's sale was held on September 16; and the sale was confirmed and a sheriff's deed delivered to Kleven on October 3, 1986. Although plaintiff testified that she was at all times aware of the occupancy of a portion of the premises by the defendant's beauty salon, the defendant was not made a party to the foreclosure action, nor was any notice given to her.

On the other hand, defendant testified that she knew that the property had been sold because she read in the newspaper the account of the sheriff's sale. Her first contact with the new

owner was during approximately the last week in October 1986, when plaintiff's attorney, Robert Brenner, stopped by the beauty salon and told Brunner that he was now taking care of the building and they needed to talk. A meeting was held on October 25, during which they discussed various problems with the building, which included the claim that Brunner had paid expenses and upkeep which properly should have been paid by the landlord.

It was Brunner's testimony that in November of 1985, when Economy went out of business, she did not know to whom she should make rental payments. Therefore, at the suggestion of Economy's manager, she claimed, she opened a trust account in the name of Economy and deposited the rental payments up through October of 1986.

On November 20, 1986, defendant sent a rent check to Brenner. This check was retained, but not cashed.

On December 15, 1986, a notice to quit was served on the defendant, giving as a reason "failure to pay rent or fulfill other rental agreements since November, 1985, or to enter into a lease arrangement satisfactory to lessor." Defendant failed to vacate the premises and, on December 20, mailed in another rent payment to Brenner. The latter responded with a letter similar to one sent following the November 20 payment, acknowledging receipt of the check and indicating that a statement and report as to past-due payments during the defendant's occupancy of the premises had not been received. The letter went on to state: "Please provide that information immediately. We do not presently acknowledge that a lease in fact continues to exist. We have not and will not negotiate the check until an understanding is agreed upon as I informed you in our conference." This action for forcible entry and detainer, in which plaintiff sought restitution of the premises and past-due rental payments, was filed on December 29, 1986.

After a trial to the court, judgment was entered in favor of the defendant, and the court found that defendant had a valid lease for the premises and that plaintiff had waived her right to receive rent from defendant for the month of December 1986, and all prior months.

The facts do not seem to be in dispute. The written lease

agreement between Economy and Brunner is a standard lease with no exceptions material to this case. Defendant's occupancy was unaffected by the foreclosure sale because such a sale may not operate against the rights of any individual not served and made a party to that proceeding. *Kerr v. McCreary*, 84 Neb. 315, 120 N.W. 1117 (1909). Furthermore, under an executory contract for the sale of real estate, equitable title to the premises is conveyed to the vendee. *Hendrix v. Barker*, 49 Neb. 369, 68 N.W. 531 (1896). To that extent, the vendee stands in shoes similar to those of a holder of the legal title during a foreclosure; i.e., the vendee retains equitable title with all rights flowing therefrom until confirmation of the sale, and possibly the execution and delivery of a sheriff's deed. *Hatch v. Shold*, 62 Neb. 764, 87 N.W. 908 (1901). See, also, *Ryan v. Kolterman*, 215 Neb. 355, 338 N.W.2d 747 (1983).

Under these doctrines, Economy retained a right to redeem at any time before the October 3 order of confirmation. Unless otherwise provided for in the contract of sale between Kleven and Economy, which contract does not appear in the record, Economy was entitled to collect the rents until that date. As a general rule, a mortgagor of real estate is entitled to the possession thereof until confirmation of the foreclosure sale, and by reason thereof has a proprietary interest in the rents and profits. *Clark v. Missouri, Kansas & Texas Trust Co.*, 59 Neb. 53, 80 N.W. 257 (1899).

Accordingly, it would appear that the first rental payment which Brunner would have been obligated to make to Kleven would have been the one due October 20. However, it does not seem that Kleven made any attempt to notify Brunner of Kleven's rights as the new owner nor to seek payment of the rent which she believed to be due from Brunner. "A tenant possesses a right to a demand for payment of rent and to a reasonable opportunity to pay. There must be neglect or refusal to pay on his part before the landlord may claim a forfeiture of the lease or a judgment of ouster for nonpayment of rent." *Marine Equipment & Supply Co. v. Welsh*, 188 Neb. 385, 387, 196 N.W.2d 911, 913 (1972). See, also, *Farmer v. Pitts*, 108 Neb. 9, 187 N.W. 95 (1922). "Such provisions of the law and of leases regarding forfeitures for nonpayment of rent are not for the

purpose of enabling the landlord to obtain undue advantage of a tenant by a forfeiture of the lease on technical and inequitable grounds." *Id*. at 16, 187 N.W. at 97.

Further support for the conclusion that Brunner should not be deemed in breach of her obligations may be found in *House v. Lewis*, 108 Neb. 257, 187 N.W. 784 (1922). In *House*, the tenant (Lewis) failed to make a rent payment when he was unable to locate House at the customary place of payment when he went there to discuss matters pertaining to the lease. In denying the landlord a forfeiture, the court stated that

> [t]he plaintiff [House] under the contract must call or send for the rent at the place where the same is payable. If he fails to do so, he is himself in default and cannot charge dereliction to his tenant, who was ready to pay him at the place fixed by the law.

*Id*. at 262, 187 N.W. at 786.

As a general rule, a lessee of real estate cannot acquire any greater interest in the property than that held by the landlord, and such lessee takes subject to all claims of title enforceable against the lessor. *Schrunk v. Andres*, 221 Minn. 465, 22 N.W.2d 548 (1946). Disregarding the fact that Kleven failed to give Brunner notice of the foreclosure proceedings, Kleven did not try the case on that theory. Although the letters from her attorney to Brunner were equivocal and were as consistent with recognizing Brunner's leasehold rights as they were with treating Brunner as a trespasser, her petition sought relief on the basis of Brunner's failure to make the rental payments. She alleged that Brunner "has failed to pay her rent for a period of at least since November of 1985," that "the terms with Economy Furniture of payment required . . . $325.00 per month due on the first day of each and every month," and that "the Defendant has admitted and failed to pay the monthly rent from a period of at least November, 1985 to the present date."

We believe that Kleven, by her actions, recognized Brunner's rights under the lease in question. We have determined that Brunner had not defaulted on the terms of the lease so as to work a forfeiture, and therefore Kleven's first assignment of error is without merit.

We turn now to the trial court's finding that Kleven's failure

to cash the checks amounted to a waiver of any claim for rent. In her brief, Kleven seems to argue that she seeks to recover rent only from the time of confirmation of the foreclosure sale; i.e., October 3, 1986.

" 'A waiver, according to the generally accepted definition, is the *voluntary and intentional* relinquishment of a known right, claim, or privilege.' " (Emphasis supplied.) *Branch v. Wilkinson*, 198 Neb. 649, 663, 256 N.W.2d 307, 316 (1977).

The record quite clearly indicates that Kleven's refusal to cash the checks for November and December was predicated upon her belief that she was acting in a manner necessary to preserve her right to recover the earlier rents owed to Economy. In each of her counsel's letters to Brunner, he indicated that he was seeking "a statement and report as to the past due payments that have been made since your occupancy of the property."

Kleven's conduct does not appear to rise to the level of waiver. At no time did she, through her words or actions, "voluntarily" or "intentionally" relinquish her "right, claims, or privilege" to collect the rents owed her under the terms of a valid lease. Rather, Kleven sought to *preserve* a different set of rights.

Kleven should be entitled to prove her right to rents accruing before she received an order of confirmation and a deed, in proceedings in which Economy, perhaps, may be a necessary party. At that time, Brunner should be given the opportunity to seek, as an offset against the rents which she now holds in a trust account, the reasonable and necessary expenses properly chargeable to Economy during the period of time that it was the landlord.

The judgment of the district court is therefore affirmed in part and, in part, reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.