OLD BROADWAY CORPORATION; Paradiso of Bismarck, Inc.; Select Inns of America, Inc.; Edmond Lefreniere, d/b/a Happy Host Inn; J.E.P. Incorporated; Wold Properties, Inc.; Fagerholt–Jackson, Inc.; and Dakota Bank & Trust Company, Plaintiffs and Appellants,

v.

Richard J. BACKES as North Dakota State Highway Commissioner, Defendant and Appellee.

Civ. No. 890165.

Supreme Court of North Dakota.

Jan. 18, 1990.

Vinje Law Office, Lamb, McNair, Larson & Carlson, Ltd., Fargo, and Robert J. Schaefer, Moorhead, Minn., for plaintiffs and appellants; argued by Edmund G. Vinje II, Fargo. Appearance by Robert J. Schaefer.

Robert E. Lane (argued), Asst. Atty. Gen., State Highway Dept., Bismarck, for defendant and appellee.

MESCHKE, Justice.

Thirty-nine advertisers, who leased advertising space on 62 outdoor advertising signs in North Dakota, appealed from a judgment dismissing their request for a writ to prevent the North Dakota Highway Commissioner from removing the signs. We affirm.

These outdoor advertising signs, identified as "interim permitted signs," have been here before in litigation between the Commissioner and the sign owners. *Newman Signs, Inc. v. Hjelle*, 268 N.W.2d 741 (N.D.1978), *appeal dismissed for lack of substantial federal question*, 440 U.S. 901, 99 S.Ct. 1205, 59 L.Ed.2d 449 (1979) [*Newman I*]; *Newman Signs, Inc. v. Hjelle*, 317 N.W.2d 810 (N.D.1982) [*Newman II*]. In *Newman I* this court held, in part, that the "interim permitted signs" were removable without compensation because the sign owners waived compensation in the interim permits issued by the Commissioner.[1] *Newman II* reaffirmed that decision as the "law of the case." The Commissioner was authorized to remove "interim permitted signs."

In June 1985 the Commissioner, through his Director of Engineering Services, ordered the sign owners to remove these 62 "interim permitted signs." The advertisers[2] sought a writ of mandamus to require the Commissioner to comply with standards and priorities for removing the signs and, alternatively, a peremptory writ of prohibition to prevent the Commissioner from removing the signs. The advertisers alleged that the Commissioner failed to categorize and prioritize the signs for removal pursu-

---

**1.** The interim permits said:

"'UNDER NO CIRCUMSTANCES WILL THE PERMITTEE BE PAID JUST COMPENSATION FOR THE REMOVAL, CHANGING, ALTERING OR MODIFICATION OF ANY SIGN, DEVICE OR DISPLAY ERECTED BY VIRTUE OF THIS PERMIT AND THE PERMITTEE EXPRESSLY WAIVERS [*sic*] HIS RIGHTS, IF ANY, TO SUCH REDRESS.'" *Newman I, supra,* 268 N.W.2d at 751.

**2.** Initially, seven advertisers sued on behalf of all advertisers on "interim permitted signs," requesting class-action status. In *Old Broadway Corp. v. Hjelle*, 411 N.W.2d 81 (N.D.1987), a majority of this court affirmed the trial court's denial of class-action status. Thirty-two additional advertisers thereafter intervened as plaintiffs.

ant to Section IX of the Right of Way Manual of the North Dakota State Highway Department[3] and regulations promulgated under the Federal Highway Beautification Act.[4] The advertisers claimed that the Commissioner arbitrarily categorized the signs as "illegal," the first priority for removal. The advertisers asserted that the signs should have been placed in other and lower priority categories for removal and that, therefore, the Commissioner should not have ordered removal of these signs until all of the higher priority signs had been removed. The advertisers alleged that the Commissioner's actions violated their constitutional right to free exercise of commercial speech.

After trial, the trial court concluded that the advertisers' status was the same as the sign owners and that the advertisers could not succeed on their free speech argument because *Newman I* rejected the same argument by the sign owners. The trial court additionally concluded that the interim permitted signs were illegal and that the Commissioner's procedures to identify the signs as illegal and to designate them for removal complied with due process. The advertisers appealed.

The statutes for issuing a writ of mandamus [NDCC ch. 32–34] and for issuing a writ of prohibition [NDCC ch. 32–35] frame our analysis. A writ of mandamus may be issued when the petitioner has a clear legal right to the performance of the act and when there is not a plain, speedy, and adequate remedy in the ordinary course of law. NDCC 32–34–01; 32–34–02; *McCallum v. City Comm'rs*, 393 N.W.2d 263 (N.D.1986); *Fargo Education Ass'n v. Paulsen*, 239 N.W.2d 842 (N.D.1976). A writ of prohibition is an extraordinary remedy to prevent an inferior body or tribunal from acting without or in excess of jurisdiction when there is not a plain, speedy, and adequate remedy in the ordinary course of law. NDCC 32–35–01; 32–35–02; *Schneider v. Seaworth*, 376 N.W.2d 49 (N.D.1985); *Schneider v. Ewing*, 310 N.W.2d 581 (N.D. 1981). Since issuance of either writ is discretionary, the denial of a writ will not be overturned on appeal absent an abuse of discretion. *Schneider v. Seaworth, supra; Fargo Education Ass'n v. Paulsen, supra.* A court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably. *Schneider v. Seaworth, supra.* In this case, we affirm because we are not convinced that the trial court abused its discretion.

On appeal, the advertisers contended that the trial court misapplied the law on the exercise of the constitutional right of

3. Section 9.03(c) of the Right of Way Manual said:
"C. Project priorities. The following will reflect the general priority of sign removal, although some variance may be necessary.
"1. Illegal and abandoned signs.
"2. Company agreements.
"3. Area or route projects.
"4. Signs in areas which have been designated as scenic under authority of state law.
"5. Product advertising.
"6. Nontourist oriented directional advertising.
"7. Tourist oriented directional advertising."

4. 23 CFR 750.304(a) said:
"The State's written policies and operating procedures for implementing its sign removal program under State law and complying with 23 U.S.C. 131 and its proposed time schedule for sign removal and procedure for reporting its accomplishments shall be submitted to the FHWA [Federal Highway Administration] for approval within 90 days of the date of this regulation. This statement should be supported by the State's regulations implement-

ing its program. Revisions to the State's policies and procedures shall be submitted to the FHWA for approval. The statement should contain provisions for the review of its policies and procedure to meet changing conditions, adoption of improved procedures, and for internal review to assure compliance. The statement shall include as a minimum the following:
"(a) *Project priorities.* The following order of priorities is recommended.
"(1) Illegal and abandoned signs.
"(2) Hardship situations.
"(3) Nominal value signs.
"(4) Signs in areas which have been designated as scenic under authority of State law.
"(5) Product advertising on:
"(i) Rural Interstate highway.
"(ii) Rural primary highway.
"(iii) Urban areas.
"(6) Nontourist-oriented directional advertising.
"(7) Tourist-oriented directional advertising."

commercial free speech; that the court erred in holding that the interim permitted signs were illegal; and that the court erred in determining that the Commissioner complied with due process.

As a general rule, a lessee does not acquire any greater rights in property than those held by the lessor, and a lessee takes subject to any claim enforceable against the lessor. *Kleven v. Brunner*, 229 Neb. 883, 429 N.W.2d 384 (1988); *Schrunk v. Andres*, 221 Minn. 465, 22 N.W.2d 548 (1946); *see* 49 Am.Jur.2d, Landlord and Tenant, § 233 (1970). The advertisers merely leased advertising space on the signs from the owners. Therefore, the advertisers do not have any greater rights than the owners of the signs.

The advertisers' constitutional claim is controlled by *Newman I* in which we held that removal of the signs would not violate the sign owners' First Amendment guarantee of freedom of commercial speech. *See also City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). We are not persuaded that any different analysis than that used in *Newman I* is appropriate for the advertisers' claim. We therefore conclude that the Commissioner's actions did not violate the advertisers' freedom of commercial speech.

The rest of our analysis requires a brief review of the history of interim permitted signs in North Dakota. The Federal Highway Beautification Act [23 U.S.C. § 131] was enacted in 1965, and the North Dakota Act [NDCC ch. 24–17] was enacted effective February 28, 1967. On December 3, 1965, the Commissioner, after obtaining an opinion from the North Dakota Attorney General that he was authorized to do so, issued rules and regulations governing outdoor advertising.[5] These regulations pro-

hibited the establishment of outdoor signs unless a written permit was obtained from the Commissioner. Thereafter,

"[i]n April 1966 the Commissioner issued an interim [permitted sign] policy to provide for controlled erection of advertising structures until final standards were promulgated by the [North Dakota Highway Corridor] Board in agreement with the Secretary of Commerce. It provided for permits to be issued under certain circumstances 'for a term extending to January 1, 1970, unless sooner invalidated by agreement between the State Highway Commissioner and the Secretary of Commerce or by standards adopted by the Secretary of Commerce, at which time the sign must be removed by the permittee unless extended by the State Highway Commission. The permittee must agree to save the State harmless from any costs or liabilities arising from the removal of the sign and cancellation of the lease between sign owner and landowner.' "

*Newman I, supra*, 268 N.W.2d at 746. In *Newman I* this court held that the language of the interim permits meant that the signs could be removed without compensation. *See also Newman II*. The issue here is when those signs can be removed.

Although the original permits for these interim permitted signs are not in this record, the permits are in the records of *Newman I* and *II*. We take judicial notice of the language of the permits from those records. *See Patten v. Green*, 397 N.W.2d 458 (N.D.1986). *See also* NDREv 201 and its Explanatory Note. The language of the interim permits described the Commissioner's right to order the signs removed:

"This permit will remain in effect until January 1, 1970, unless such sign, display or device shall violate any of the rules, regulations or policies as adopted by the Secretary of Commerce relative to such signs or shall violate the provisions

---

**5.** NDCC 24–17–09(3) now authorizes the Commissioner "to establish permits authorizing the erection, construction, placement, replacement, repair and maintenance of any outdoor sign"

within six hundred sixty feet from the state highway system, and NDCC 24–17–11 authorizes the Commissioner to order the owner to remove any illegal sign.

of any agreement entered into by and between the Secretary of Commerce and the North Dakota State Highway Commissioner, relating to such signs, displays or devices, and thereafter may be renewed, at the option and sole discretion of the Highway Commissioner, for a period to be determined by the parties.

"In the event that this permit is not renewed on or before January 1, 1970 or prior thereto or at any time thereafter, the permittee agrees to remove the sign, display or device within thirty (30) days after the expiration of this permit or the renewal period."

Unless the permit was renewed "at the option and sole discretion of the Highway Commissioner," his right to require removal was unconditional.

■ The Commissioner's request to remove these interim permitted signs relied upon the unconditional nature of the right to require removal:

"As agreed upon in the original permit, the permittee agrees to remove the sign upon request of the North Dakota State Highway Department."

Irrespective of whether the interim permitted signs are illegal or are in another category of priority for removal, the sign owners agreed, as a condition for receiving the permit, to remove the signs upon the expiration of the permit or any renewal period. The interim permits therefore authorized the Commissioner to require the sign owners to remove the interim permitted signs in 1985, which was after the expiration of the interim permits.

Because the advertisers' rights derived from their lease of the signs from the owners, the advertisers did not have any greater rights in the interim permitted signs vis-a-vis the Commissioner. The advertisers did not have a clear legal right to require the Commissioner to keep the signs in place. The Commissioner was acting within his jurisdiction in ordering the signs removed. The advertisers therefore were not entitled to a writ of mandamus or prohibition, and the trial court did not abuse its discretion in denying them that relief.

We affirm the judgment.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.