1999 ND 159

George GOTTBREHT, Plaintiff and Appellant,

v.

STATE of North Dakota; North Dakota Petroleum Tank Release Compensation Fund; the North Dakota Department of Health, Defendants and Appellees,

North Dakota Department of Transportation; City of Dunseith, N.D.; Curtis and Denise Halvorson; Martha H. Korum Estate; Johnie and Patricia Myer; Fernande Berube Lagasse; Glenn Sletto; James Gottbreht; Lorraine Gottbreht; Fred Dutra and Frances Kay Gottbreht Dutra; Mary Ann Gottbreht Brennan; and Dakota Fire Insurance Company, Defendants.

No. 980375.

Supreme Court of North Dakota.

Aug. 2, 1999.

Mark A. Beauchene, Wold Johnson, P.C., Fargo, moved for the admission of Charles L. Dorothy (argued), Dorothy Law Firm, Sioux Falls, for plaintiff and appellant.

James S. Hill and Rebecca S. Thiem (argued), Special Assistant Attorneys General, Zuger Kirmis & Smith, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] George Gottbreht appealed from a judgment dismissing his action for a judgment declaring his rights and responsibilities arising out of a petroleum release. We conclude Gottbreht's claim is not appropriate for a declaratory judgment, and we affirm.

I

[¶ 2] Gottbreht owns and operates a truck stop, convenience store, restaurant, and motel at Dunseith under the name Dale's Cash Supply. Gasoline escaped from the truck stop's petroleum distribution system, and contaminated soil at the truck stop and the soil of adjoining landowners. By letter of July 13, 1995, the North Dakota State Department of Health and Consolidated Laboratories advised Gottbreht it would require commencement of "corrective action as soon as possible," delineation of the extent of the hydrocarbon plume, and identification of "all receptors (private wells, sewer lines, etc.) which may be, or have been impacted by the hydrocarbon release." On July 20, 1995, Gottbreht signed an application for reimbursement from the Petroleum Tank Release Compensation Fund ("the Fund"). On October 28, 1995, an environmental testing company reported there was petroleum pollution of soil and water, an underground petroleum plume ran to the south-

ern boundary of Gottbreht's property, and further testing would be necessary to determine how far south of Gottbreht's property the petroleum plume extended. The Health Department sought bids for the design, installation, and operation of a hydrocarbon recovery and treatment system.

[¶ 3] By letter of April 3, 1996, the Health Department advised Gottbreht it would require: (1) "Biannual, ground water sampling of the existing monitoring wells"; (2) collection of water quality samples at four locations; (3) discontinuance of water consumption at one location and replacement of a water line; (4) monitoring of ambient air; and (5) documentation of the type of material used in water lines and connections. The letter also advised Gottbreht "[f]uture monitoring plans and remedial activities will be determined by the results of the monitoring events," and "if current site conditions change ... an evaluation of the problem and subsequent remediation may be requested by this Department." On November 25, 1996, the Health Department requested "[r]ecovery of the free-phase petroleum product encountered in MW–9," and continuation of the monitoring, sampling, and documentation already required. On May 23, 1997, the Health Department again requested Gottbreht to continue the sampling, monitoring, and documentation already required, and advised Gottbreht: "Future monitoring plans and possible, additional remedial activities will be determined by the results of the monitoring events."

[¶ 4] Gottbreht's attorney sent to Susan Anderson, Special Assistant Attorney General, a second application for reimbursement from the Fund and a letter stating:

George would like to be allowed to meet with and give a presentation to the North Dakota Petroleum Tank Release Compensation Fund Advisory Board in an attempt to resolve the issues between he and the Fund without litigation.... George believes that the Fund has an obligation, less his monetary responsibility under Chapter 299, to either clean up his property and the properties of his neighbors or pay them for the reduction in the resale value of their properties caused by using their properties as the site for petroleum pollution to be broken down by nature over 50 to 100 years.

Gottbreht made a presentation to the Petroleum Release Compensation Advisory Board on June 3, 1997. The presentation was not a formal proceeding under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. After Gottbreht's presentation, the Board sent Gottbreht's attorney a letter stating:

The petroleum Tank Release Fund is a reimbursement fund and consequently will only reimburse for eligible costs of corrective action. Decreased property value will not be considered an eligible cost....

In addition, based upon the North Dakota Department of Health's observations, Mr. Gottbreht's site contains no adverse health and safety issues that would require any further clean up costs. If the Department of Health's observations were to change, then the Board would, of course, revisit any claims that Mr. Gottbreht would submit to the fund.

Lastly, the North Dakota Petroleum Tank Release Fund will only consider third party damages actually, reasonably and necessarily incurred by third parties if paid by the tank owner.

[¶ 5] Gottbreht sued the State of North Dakota, the North Dakota Petroleum Tank Release Compensation Fund, the North Dakota Department of Health, the North Dakota Department of Transportation, the City of Dunseith, and adjoining property owners. Through an amended summons and complaint, Gottbreht added EMC Insurance Companies as defendants. Gottbreht's complaint demanded a judgment declaring:

(a) Under existing federal and North Dakota laws and regulations dealing with the responsibility for petroleum releases from the licensed tanks and piping facilities of North Dakota Petroleum Marketers, the Fund is obligated to pay 90% of the cost (with the extent of Gott-

breht's responsibility under Chapter 299 limited to $20,000) of (i) removing and disposing of the petroleum pollution on Gottbreht's property in Dunseith, and bringing in clean soil if necessary, (ii) determining the extent of the petroleum plume to the south of Gottbreht's property in Dunseith, and (iii) removing and disposing of the petroleum pollution on the property south of Gottbreht's property in Dunseith, and bringing in clean soil if necessary.

EMC Insurance Companies moved for a declaratory judgment. The State defendants moved for summary judgment dismissing Gottbreht's claim. Gottbreht moved for a continuance until a number of depositions could be taken, for an order bifurcating the liability and damages issues, and for an order allowing him to amend his complaint. On June 3, 1998, the trial court substituted Dakota Fire Insurance Company for EMC Insurance Companies.

[¶ 6] After a hearing on June 8, 1998, the trial court issued a memorandum opinion granting Dakota Fire Insurance Company's motion and ordering dismissal of Gottbreht's claim against it, granting the State defendants' motion for summary judgment, and denying Gottbreht's motions. The trial court recognized Gottbreht "failed to pursue administrative remedies ... and create a sufficient record for judicial review" and reasoned:

> Procedurally, the plaintiff seeks to have this Court issue a declaratory judgment making findings that the Fund is not being administered properly or in accordance with State and Federal law, issue a writ of mandamus in order to compel the Fund to act in accordance with the plaintiff's legal position and to declare that the activities of the State in denying the application for cleanup funds constitutes inverse condemnation and a "taking" of his property and the property of others by State action for which damages should be awarded.
>
> . . . .
>
> The authorities cited by the defense in support of their position are persuasive

and convince this Court that failing to grant the motion and thrusting itself into the controversy will clearly end up being the "second-guessing" of an administrative agency prematurely. Had the adjudicative process been pursued pursuant to N.D.C.C. 28-30, this Court would be able to have a basis for making a reasonable determination of whether or not the laws and regulations have been properly followed and the agency's conclusions comport with the evidence.

Gottbreht moved for reconsideration. After a hearing, the trial court denied the motion. A judgment of dismissal was entered, and Gottbreht appealed.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-05-06, 32-23-01, and 32-34-01. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28-27-01 and 28-27-02. The appeal was timely under N.D.R.App.P. 4(a).

II

A

[¶ 8] N.D.C.C. § 32-23-01 authorizes courts to enter declaratory judgments. N.D.C.C. § 32-23-02 provides: "Any person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and may obtain a declaration of rights, status, or other legal relations thereunder." Gottbreht seeks a declaratory judgment to compel the administrator of the Fund to pay for extensive and expensive remediation the Health Department has not found reasonable and necessary or to pay damages. In effect, Gottbreht is seeking a writ of mandamus.

[¶ 9] N.D.C.C. § 32-34-01 provides: "The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a

duty." N.D.C.C. § 32–34–02 provides: "The writ must be issued in all cases when there is not a plain, speedy, and adequate remedy in the ordinary course of law."

[¶ 10] Mandamus is available to compel an administrative agency to perform a ministerial duty the law requires the agency to perform, but not to direct how, or in whose favor, an agency decides a case. *Tooley v. Alm,* 515 N.W.2d 137, 140 (N.D.1994). Mandamus is not available to compel performance of a discretionary act. *Keidel v. Mehrer,* 464 N.W.2d 815, 816 (N.D.1991); *Lund v. North Dakota State Highway Dep't,* 403 N.W.2d 25, 26 (N.D.1987). A party seeking a writ of mandamus has the burden of demonstrating a clear legal right to performance of the acts sought to be compelled by the writ. *Krabseth v. Moore,* 1997 ND 224, ¶ 6, 571 N.W.2d 146; *Keidel,* 464 N.W.2d at 816; *Lund,* 403 N.W.2d at 26. "Issuance of the writ is left to the sound discretion of the trial court." *Krabseth,* at ¶ 6. "The issuance of a writ of mandamus is discretionary and this Court will not reverse the trial court's denial of a writ absent an abuse of discretion." *Keidel,* 464 N.W.2d at 816 (citing *Old Broadway Corp. v. Backes,* 450 N.W.2d 734 (N.D. 1990)). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Krabseth,* at ¶ 6.

### B

[¶ 11] 1991 N.D. Sess. Laws ch. 299 established a petroleum tank release compensation fund and an advisory board. The Act named the manager of the state fire and tornado fund as the administrator of the Fund, and authorized the Health Department to require corrective actions when petroleum releases occur. Section 2 of the Act defines releases and corrective actions:

4. "Corrective action" means an action taken to minimize, contain, eliminate, remediate, mitigate, or clean up a release, including any remedial emergency measures. The term also includes compensation paid to third parties for bodily injury or property damage which is determined by the board to be eligible for reimbursement. The term does not include the repair or replacement of equipment or preconstructed property.

. . . .

12. "Release" means any unintentional spilling, leaking, emitting, discharging, escaping, leaching, or disposing of petroleum from a tank into the environment whether occurring before or after the effective date of this Act, but does not include discharges or designed venting allowed under federal or state law or under adopted rules.

Section 6 of the Act provides:

If the department has reason to believe a release has occurred, it shall notify the administrator. The department shall direct the owner or operator to take reasonable and necessary corrective actions as provided under federal or state law or under adopted rules.

Section 12 of the Act makes owners and operators of petroleum tanks "liable for the cost of the corrective action required by the department, including the cost of investigating the releases." However, the Act allows owners and operators to seek reimbursement for the costs of corrective action:

SECTION 18. Reimbursement for corrective action. The administrator shall reimburse an eligible owner or operator for ninety percent of the costs of corrective action, including the investigation, which are greater than five thousand dollars and less than one million dollars per occurrence and two million dollars in the aggregate. An eligible tank owner or operator may not be liable for more than twenty thousand dollars out-of-pocket expenses for any one release.

. . . .

SECTION 19. Application for reimbursement. Any owner or operator who proposes to take corrective action or has undertaken corrective action in response to a release, the time of such release being unknown, may apply to the administrator for partial or full reimbursement under section 18 of this Act. An owner or operator may be reimbursed only for releases discovered and reported after the effective date of this Act.

SECTION 20. Administrator to determine costs. A reimbursement may not be made from the fund until the administrator has determined that the costs for which reimbursement is requested were actually incurred and were reasonable.

### C

 [¶ 12] If the Health Department believes a release has occurred, Section 6 of Chapter 299 requires it to notify the administrator of the Fund and "direct the owner or operator to take reasonable and necessary corrective actions." Section 12 of Chapter 299 provides an "owner or operator is liable for the cost of the corrective action required by the department." Section 19 of Chapter 299 allows an owner or operator to apply to the administrator of the Fund for reimbursement of the cost of corrective action. Section 20 of Chapter 299 provides: "A reimbursement may not be made from the fund until the administrator has determined that the costs for which reimbursement is requested were actually incurred and were reasonable." Thus, the Health Department may require reasonable and necessary corrective actions when a release occurs, and an owner or operator may apply for reimbursement of the cost of corrective action, but a reimbursement may not be made from the Fund unless the administrator determines the costs were reasonable.

[¶ 13] Determining what corrective actions to require upon a release involves considering the nature and extent of the damage caused by the release, the risk to public health and the environment, issues of policy and governmental discretion, and the feasibility of possible corrective actions. Chapter 299 gives the Health Department and the administrator of the Fund discretion to determine which corrective actions are reasonable and necessary in light of the public health and environmental risks posed by a release. The administrator determines whether the costs for which reimbursement has been requested were actually incurred and were reasonable. Gottbreht has demanded a judgment declaring the Fund must pay the cost of corrective measures the Health Department and the administrator of the Fund have not determined are reasonable and necessary. Gottbreht has not shown a clear legal right to performance of the acts he has sought to be compelled. We conclude a declaratory judgment for the relief sought by Gottbreht would have been inappropriate, and we conclude the trial court did not abuse its discretion in dismissing Gottbreht's claim.

### III

[¶ 14] The judgment is affirmed.

[¶ 15] GERALD W. VANDE WALLE, C.J., NEUMANN, KAPSNER, JJ., and EVERETT OLSON, D.J., concur.

[¶ 16] EVERETT NELS OLSON, D.J., sitting in place of MARING, J., disqualified.